# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ELIZABETH RAMSEY, Personal Representative of the Estate of DOROTHY RAMSEY, Deceased, | § § § § | No. 305, 2017 |
| Plaintiff Below, Appellant, | § § § | Court Below: Superior Court of the State of Delaware |
| v. | § § § | |
| GEORGIA SOUTHERN UNIVERSITY ADVANCED DEVELOPMENT CENTER and HOLLINGSWORTH AND VOSE COMPANY, | § § § § § | C.A. No. N14C-01-287 ASB |
| Defendants Below, Appellees. | § § | |

Submitted: April 18, 2018
Decided: June 27, 2018

Before **STRINE**, Chief Justice; **VALIHURA**, **VAUGHN**, **SEITZ**, and **TRAYNOR**, Justices, constituting the Court *en Banc*.

Upon appeal from the Superior Court. **REVERSED** and **REMANDED**.

Raeann Warner, Esquire (*Argued*), JACOBS & CRUMPLAR, P.A., Wilmington, Delaware, *for Appellant, Elizabeth Ramsey, Personal Representative of the Estate of Dorothy Ramsey, Deceased*.

Eileen M. Ford, Esquire (*Argued*), Megan T. Mantzavinos, Esquire, MARKS, O'NEILL, O'BRIEN, DOHERTY & KELLY, P.C., Wilmington, Delaware, *for Appellee, Georgia Southern University Advanced Development Center*.

Robert S. Goldman, Esquire, Lisa C. McLaughlin, Esquire, PHILLIPS, GOLDMAN, McLAUGHLIN & HALL, P.A., Wilmington, Delaware; Sarah P. Kelly, Esquire (*Argued*), NUTTER, McCLENNEN & FISH, LLP, Boston, Massachusetts, *for Appellee, Hollingsworth and Vose Company*.

David W. deBruin, Esquire, THE deBRUIN FIRM LLC, Wilmington, Delaware, *for Amici Curiae Delaware Trial Lawyers Association* and *American Association for Justice*.

Peggy L. Ableman, Esquire, McCARTER & ENGLISH, LLP, *for Amici Curiae Coalition for Litigation Justice, Inc., National Association of Manufacturers*, and *NFIB Small Business Legal Center*; Mark A. Behrens, Esquire, Christopher E. Appel, Esquire, SHOOK, HARDY & BACON L.L.P., Washington, D.C., *for Amicus Curiae Coalition for Litigation Justice, Inc.*; Linda E. Kelly, Esquire, Quentin Riegel, Esquire, Leland P. Frost, Esquire, MANUFACTURERS' CENTER FOR LEGAL ACTION, Washington, D.C., *for Amicus Curiae National Association of Manufacturers*; Karen R. Harned, Esquire, Elizabeth Milito, Esquire, NFIB SMALL BUSINESS LEGAL CENTER, Washington, D.C., *for Amicus Curiae NFIB Small Business Legal Center*.

**STRINE**, Chief Justice:

This case requires us to consider some mundane realities and their implications for our tort law. If you want clean clothes, you need to launder them. If you want clean clothes and you work in an industrial facility that exposes you to dust from the processes carried out in the facility, you need to launder your clothes more often. If you are like many families in that situation, someone in your household, often a spouse, has the task of doing the laundry. And if you are the one with that task, and the dusty clothes you launder weekly or more for many years contain asbestos dust brought home from your spouse's workplace, your exposure to that asbestos dust could cause you to suffer serious injury and even death.

This is a "take-home"[1] asbestos case in which an employee's now-deceased wife sued the companies who supplied asbestos products to her husband's employer. Her husband's employer caused him to work with those products, and the asbestos in them came home on his clothes. The wife's theory of recovery against the asbestos product manufacturers is simple: under § 388 of the Restatement (Second)

---

[1] This opinion uses the term "take-home asbestos exposure" to describe "the situation whereby a family member is exposed to asbestos brought home from work on the clothing of another family member . . . ." *In re Asbestos Litig. (Riedel)*, C.A. No. 04C-07-099-ASB, 2007 WL 4571196, at *1 n.1 (Del. Super. Dec. 21, 2007) (noting that "[t]his term, along with others such as 'household exposure' and 'spousal exposure,' have become fixtures in the asbestos litigation nomenclature"); *see also* Mark A. Behrens, *What's New in Asbestos Litigation*, 28 REV. LITIG. 501, 545–46 (2009) (noting that take-home asbestos claims "involve workers' family members who have been exposed to asbestos off-site, typically through contact with a directly exposed worker or that worker's soiled work clothes").

of Torts (the "Restatement"), which this State has embraced, an asbestos product manufacturer has a duty to warn foreseeable users of the dangers of its products, to the extent the asbestos product manufacturer has actual or constructive knowledge of that danger, and when it is unlikely that the user will discover the dangerous condition.[2] The legal question underlying this appeal is deceptively simple: May the spouse of an employee harmed by take-home asbestos exposure sue an asbestos product manufacturer and recover if it failed to provide warnings and safe laundering instructions to her spouse's employer, so he could protect himself or whoever laundered his clothes?

If one looks at the Restatement alone, this is a straightforward question with a straightforward answer. When a manufacturer supplies an asbestos product that it knows will be used in a downstream industrial process, it knows that if an employee involved in that later process gets dust from the asbestos product on his clothes, there is a danger of harmful exposure if care is not taken to limit exposure during the laundering process. Because it is common for an employee to have a household member, like a spouse, do the laundry, the plaintiff-spouse here is a foreseeable plaintiff and should be able to recover if the asbestos product manufacturer did not provide safe laundering instructions to the employer so the employer could in turn

---

[2] RESTATEMENT (SECOND) OF TORTS § 388 (AM. LAW. INST. 1965) [hereinafter RESTATEMENT].

2

instruct its employees, who could then protect themselves and those who laundered their clothes.

But the defendant-manufacturers in this case resist this logic largely because of a strand of our case law addressing take-home asbestos claims against employers. In those cases, we held that an employer could not be liable in tort to the employee's spouse who laundered his asbestos-covered clothes repeatedly for years, even though the employer controlled the conditions under which the employee was exposed to asbestos dust in the workplace, and thus the extent to which the asbestos dust got on his clothes.[3] The rationale for that holding was that, although the employer was the party that caused the clothes to become covered in asbestos dust, it did not engage in "misfeasance" under tort law, but only "nonfeasance," and therefore could not be liable to the employee's spouse, because it owed only the employee, and not his spouse, a duty of care.[4] Based on this case law, the defendant-manufacturers argue that it does not make sense to immunize the employer from liability to the employee's spouse, but to hold the asbestos product manufacturers responsible, when it was the employer who shaped the conditions under which the employee worked with the asbestos products; failed to ensure that the employee's clothes were safely laundered on-site; and failed to give the employee safe

_____

[3] *Riedel v. ICI Americas Inc.*, 968 A.2d 17 (Del. 2009); *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162 (Del. 2011).
[4] *Id.*

3

laundering instructions for laundering his clothes at home, and the asbestos product manufacturers, by contrast, had no relationship with the employee and no control over his workplace exposure. Relatedly, the defendant-manufacturers suggest that if we hold that an employee's spouse can state a claim in a case like this, a menagerie of plaintiff classes will emerge, claiming to have been exposed to asbestos dust during encounters with employees of industrial facilities that used asbestos products.

These arguments have force. But their logic is best addressed by adhering to the basic principles that have long applied in this area of law, and by taking care to define what is required as reasonable care by an asbestos product manufacturer in this context.

Proceeding in this manner, we resist the defendant-manufacturers' invitation to act as if the test applicable to their conduct is identical to the test applicable to parties, such as employers or retailers, who might use or sell their asbestos products downstream. Instead, we adhere to § 388 of the Restatement, which has long governed whether manufacturers can be held liable for negligent failure to warn under our law. When applying § 388, the mundane realities of life make the spouses of employees who launder asbestos-covered clothes foreseeable plaintiffs to whom the manufacturers can be held liable. Taking into account, though, the argument that the asbestos product manufacturers are not in a position to warn employees directly, much less the other people who might launder employees' clothes, we circumscribe

4

the conditions under which manufacturers can be held liable, applying established principles of our law. Under our law, an employee who is injured by asbestos products used in his workplace cannot ordinarily recover if the asbestos product manufacturer provided adequate warnings to the employer about the product's dangers and safe use.[5] In that circumstance, the employee must rely on his employer to have passed on and followed the warnings and instructions. Likewise, in this context, so long as an asbestos product manufacturer has provided sufficient warnings to the employer about the dangers of the product and safe laundering instructions for how clothes exposed to the product should be laundered to avoid unsafe exposure, the manufacturer cannot be held liable to an employee's spouse. That is, so long as the asbestos product manufacturer provides safe laundering instructions to the employer, it will face no liability to an employee's spouse, or to any other person the employee entrusted to do his laundry.

We agree with the defendant-manufacturers that making them uniquely subject to suit in cases like this is difficult to rationalize. It is neither fair nor efficient to immunize employers who control employee exposure, are best positioned to inform employees of the risks of laundering asbestos-covered clothes, and are positioned to prevent dangerous at-home laundering altogether by requiring that employees' clothes stay on-site and be cleaned under conditions controlled for safety

---

[5] *In re Asbestos Litig. (Mergenthaler)*, 542 A.2d 1205 (Del. Super. 1986).

by the employer.  The problem for the defendant-manufacturers, however, is that their argument underscores the potency of the plaintiff-spouse's position that our case law addressing employer liability in this context is not optimal, but does not counsel for immunity for them.  That case law, to our mind, slights the importance of the employer's role as the active force that caused its employees to work with asbestos products under conditions that it shaped.  By those actions, the employer engaged in misfeasance under the Restatement and other respected sources, because its affirmative acts created a risk of harm.[6]  A simple example shows why this is so. It might be nonfeasance to fail to tell someone that he has a "please kick me sign" on his back.[7]  It is misfeasance, however, if you are the one who put the sign there

---

[6] RESTATEMENT § 284(a)–(b) (misfeasance is "an act which the actor as a reasonable man should recognize as involving an unreasonable risk of causing an invasion of an interest of another" and nonfeasance is "a failure to do an act which is necessary for the protection or assistance of another and which the actor is under a duty to do"); *id.* § 314 cmt. c (a person committed misfeasance if he "injured another by a positive affirmative act" and nonfeasance if he "merely did nothing, even though another might suffer serious harm because of his omission to act").

[7] *See generally* Francis H. Bohlen, *The Moral Duty to Aid Others as a Basis of Tort Liability*, 56 U. PA. L. REV. 217, 218 n.3 (1908) ("'It is undoubtedly the moral duty of every person to extend to others assistance when in danger.' 'And if such efforts should be omitted by any one when they can be made, without imperiling his own life, he would by his conduct draw upon himself the just censure and reproach of good men; but this is the only punishment to which he would be subjected by society.'" (quoting *United States v. Knowles*, 26 F.Cas. 800 (4 Sawy. 517) (N.D. Cal. 1864))); *id.* ("'With purely moral obligations, the law does not deal.  For example, the priest and the Levite who passed by on the other side were not, it is supposed, liable at law for the continued suffering of the man who fell among thieves, which they might and morally ought to have prevented or relieved.  Suppose A, standing close by a railroad sees a two-year-old babe on the track and a car approaching.  He can easily rescue the child with entire safety to himself.  And the instincts of humanity require him to do so.  If he does not, he may perhaps justly be styled a ruthless savage

and then failed to tell the victim of your prank when he was about to stroll by a crowd of people wearing heavy boots.[8] We therefore overrule our prior cases, to the extent necessary, reverse the Superior Court's grants of summary judgment, and hold that a household member who regularly launders an employee's asbestos-covered clothing, like the plaintiff-spouse here, may sue her spouse's employer for its failure to provide warnings and safe laundering instructions. Consistent with our prior reasoning, however, the spouse cannot recover if the employer made adequate arrangements on-site to address the harms that may result from laundering asbestos-covered clothes, or gave the employee the information needed to protect himself or others who launder his clothes. In other words, the employer is in a safe harbor so long as it adequately addressed the harm at the workplace or gave its employee warnings and safe laundering instructions.

Under this liability regime, we take into fair account the legitimate concerns about exposing asbestos product manufacturers to uncabined liability to myriad plaintiffs in take-home asbestos exposure cases. But, as important, we make sure

---

and a moral monster, but he is not liable in damages for the child's injury or indictable under the statute for its death.'" (quoting *Buch v. Amory Co.*, 44 A. 809, 810 (N.H. 1898))).

[8] W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 56, at 373 (5th ed. 1984) ("[B]y 'misfeasance' the defendant has created a new risk of harm to the plaintiff, while by 'nonfeasance' he has at least made his situation no worse, and has merely failed to benefit him by interfering in his affairs.").

that foreseeable plaintiffs who suffer serious injury have a basis for recovery, if they can prove out all the other elements of their claims.

This duty scheme is consistent with long-standing principles of law that support liability for harm to others caused by a failure to exercise a minimal level of care in preventing a risk of harm: in a case like this, by failing to provide warnings and safe laundering instructions. Circumscribing the duties recognized here to what our courts have recognized is feasible ensures that the parade of horribles the defendant-manufacturers envision will never march.

## I.

For purposes of this appeal, the facts we accept as well-pled from the dismissed complaint are simpler than the legal questions the parties' dispute about them pose. Robert Ramsey worked for Haveg Industries, Inc. (the "Employer") at its industrial plant for 24 years, from 1967 to 1992.[9] From 1967 to 1979, Mr. Ramsey worked as a maintenance worker and regularly handled asbestos products manufactured by Georgia Southern University Herty Advanced Development Center ("Herty") and Hollingsworth and Vose Company (together with Herty, the "Manufacturers") as part of his job of making pipes and pipe fittings.[10]

---

[9] App. to Opening Br. at A44 (Third Am. Compl.).
[10] *Id.*; *In re Asbestos Litigation (Ramsey)*, 2017 WL 465301, at *2 (Del. Super. Feb. 2, 2017); Opening Br. at 6–9.

The complaint alleges that the Employer used the Manufacturers' products in industrial processes that generated asbestos dust that settled on Mr. Ramsey's work uniform when he left work each day wearing his uniform.[11]  Throughout this period, Mr. Ramsey's wife, Dorothy Ramsey, was the person who did the Ramsey family's laundry and regularly washed Mr. Ramsey's asbestos-covered uniform.[12]  Mrs. Ramsey eventually suffered and died from lung cancer in 2015.[13]

The facts of this case could give rise to some confusion.  The focus of this opinion is on whether the asbestos product manufacturers who sold asbestos products to Mr. Ramsey's employer, Haveg, are liable to Mrs. Ramsey.  The confusion is possible because Haveg was itself a manufacturer, who took the asbestos products the asbestos product manufacturers sold to it, and used them in manufacturing other products.  For the sake of clarity, we refer to the defendants who sold the asbestos products to Haveg as the asbestos product manufacturers, or simply, the "Manufacturers."  To distinguish its role, we refer to Haveg as the "Employer," because it was Mr. Ramsey's employer and the party that shaped the conditions under which he worked with the asbestos products.

---

[11] App. to Opening Br. at A44 (Third Am. Compl.); *Ramsey*, 2017 WL 465301, at *2.
[12] *Ramsey*, 2017 WL 465301, at *2; Opening Br. at 9–10.
[13] App. to Opening Br. at A44–45 (Third Am. Compl.); *id.* at A432 (Certification of Vital Record of Dorothy Ramsey).

**A.**

Before her death, Mrs. Ramsey sued the Manufacturers, alleging that their negligence caused her illness, because they knew of the dangers of asbestos exposure, did not "adequately warn [her] . . . of the risks of asbestos," did not "adequately package, distribute and use asbestos in a manner which would minimize the escape of asbestos fibers," and did not "take adequate steps to remedy" these failures.[14]

The Manufacturers moved for summary judgment,[15] arguing they had no duty to warn Mrs. Ramsey of the dangers of take-home asbestos exposure under two of this Court's prior cases, *Price v. E.I. DuPont de Nemours & Co.*[16] and *Riedel v. ICI Americas Inc.*[17] To understand the parties' contending arguments in this case, and

---

[14] *Id.* at A48–49 (Third Am. Compl.).

[15] To be more precise, one manufacturer, Herty, moved for summary judgment and prevailed. *Ramsey*, 2017 WL 465301, at *1. This inured to the benefit of Hollingsworth and Vose, a similarly situated manufacturer, who filed its own later motion for summary judgment on the same theory. App. to Opening Br. at A670–72 (Hollingsworth and Vose's Mot. for Summ. J.). The Superior Court granted Hollingsworth and Vose's motion for summary judgment. *Id.* at A1104–05 (Tr. of Hr'g on Hollingsworth and Vose's Mot. for Summ. J.) ("This case is identical to the case that was decided in February. The case before us concerns the same plaintiff, the same complaint, and basically the same legal argument. Thus, this Court is confined to the decision rendered in February as it is now the law of the case. So the motion for summary judgment is granted."). For the sake of readability, and because Mrs. Ramsey appeals both grants of summary judgment, we refer to the Manufacturers and their summary judgment motions together.

[16] 26 A.3d 162 (Del. 2011).

[17] 968 A.2d 17 (Del. 2009).

the reason the Superior Court ruled as it did in addressing them, it is critical to understand what *Price* and *Riedel* decided.

**B.**

In 2009, this Court considered the negligence claim of Lillian Riedel, who experienced take-home asbestos exposure when laundering her husband's asbestos-covered work uniform during the 28 years he worked at ICI Americas, Inc., a manufacturer of explosives, chemicals, pharmaceuticals, and insulation.[18]  Mrs. Riedel alleged that ICI's "negligence in failing to take reasonable measures to prevent its employees from leaving the workplace with asbestos covered clothing, or to warn her or her husband of the hazards of 'take home' asbestos exposure, was the proximate cause of her asbestosis . . . ."[19]

ICI moved for summary judgment, arguing it did not owe Mrs. Riedel a duty because she was never on ICI's premises, and her injury occurred at home.[20]  ICI rejected the notion that a duty arises "because one's actions or inactions may foreseeably cause injury to another," contending instead that a duty arises where "the relationship between the plaintiff and the defendant is such that the law should

---

[18] *Id.* at 19.
[19] *In re Asbestos Litig. (Riedel)*, 2007 WL 4571196, at *1.
[20] *Id.* at *2.

11

impose a duty upon the defendant to 'protect the plaintiff from the harm that caused [her] injuries.'"[21]

Mrs. Riedel argued in response that ICI misconstrued her claim: she was not suing ICI in its capacity as a premises owner, but rather, "as the employer of someone (her husband) with whom she cohabited" whose "unsafe work practices . . . allowed her husband to bring home friable asbestos on his work clothing."[22] And "given ICI's extensive knowledge of the hazards of asbestos, a jury could conclude that ICI knew or should have known that, in the absence of appropriate safety measures or warnings, workers exposed to asbestos on its work sites could carry that asbestos home on their clothing and thereby expose members of the household to a dangerous carcinogen."[23] Viewing the facts in the light most favorable to Mrs. Riedel, the Superior Court assumed that:

> Mr. Riedel was exposed to asbestos while working at ICI, that some of the asbestos would collect on his work clothes during the course of the day, that he wore those same asbestos-covered clothes home after work, . . . that Mrs. Riedel was exposed to friable asbestos while laundering these work clothes[,] . . . that ICI did not warn either Mr. or Mrs. Riedel of the dangers of take home asbestos exposure, nor did it institute practices to prevent employees from leaving its work sites with asbestos dust on their clothing until some time after Mr. Riedel began working there[, and] . . . that Mrs. Riedel has contracted asbestosis and asbestos related pleural disease as a result of her exposure to asbestos on her husband's work clothes.[24]

---

[21] *Id.* (internal citations omitted).
[22] *Id.* at *3.
[23] *Id.*
[24] *Id.* at *2.

12

The Superior Court determined that the question of whether ICI owed Mrs. Riedel a duty depended on their relationship because "Delaware law requires the plaintiff to demonstrate the existence of a legally significant relationship between the plaintiff and the defendant before the common law 'will impose a legal obligation upon [the defendant] for the benefit of the [plaintiff].'"[25] The Superior Court then considered and rejected three potential bases of a legally significant relationship between Mrs. Riedel and ICI: the Restatement's "employer-based provisions" and "landowner-based provisions (including the so-called 'safe workplace doctrine')," both of which it found to be inapplicable because Mrs. Riedel "never stepped foot on the employer's property,"[26] and the Restatement's special relationship provision, which it also found to be inapplicable because of the lack of relationship "either between Mrs. Riedel and ICI or Mr. Riedel and ICI, that would justify the imposition of a duty upon ICI to control the conduct of its employee while acting outside the scope of his employment and off the ICI premises."[27] The Superior Court, "unaware

[25] *Id.* at \*11 (citing *Naidu v. Laird*, 539 A.2d 1064, 1070 (Del. 1988) (alterations in original) (internal citations omitted)).

[26] *Id.* (first citing RESTATEMENT § 328E *et seq.* (addressing liability of possessors of land); and then citing *id.* § 409 *et seq.* (addressing liability of the employer of an independent contractor)).

[27] *Id.* (first citing *Naidu*, 539 A.2d 1064 (explaining that under the Restatement, the special relationship between doctor and patient can create a duty of a doctor to protect third parties from the patient's negligent acts); and then citing *In the Matter of New York City Asbestos Litig.*, 840 N.E.2d 115, 151 (N.Y. Ct. App. 2005) (finding that the special relationship provision of the Restatement does not, in the context of a take-home asbestos exposure claim, give rise to an

13

of any basis in Delaware law upon which to impose a duty upon ICI to Mrs. Riedel as the employer of her spouse," granted summary judgment in favor of ICI.[28]

Mrs. Riedel appealed, arguing that the Superior Court erred in focusing on her lack of a relationship with ICI, and that ICI's active release of asbestos was sufficient to create a duty of care.[29] This Court concluded that Mrs. Riedel presented a theory of nonfeasance to the Superior Court, but a theory of misfeasance on appeal. This was a critical difference because under the Restatement, one who commits misfeasance has "a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act," but one who commits nonfeasance has no duty of care, absent "a special relation between the actor and the other which gives rise to the duty."[30] If Mrs. Riedel had alleged nonfeasance, establishing that she had a special relationship with ICI was a prerequisite to a finding that ICI owed her a duty of care. But if she had alleged misfeasance, she could rely on the general duty of care that arises from affirmative conduct, without first having to establish the existence of a special relationship.

Applying this framework, this Court found that Mrs. Riedel had, at least implicitly, pressed her claim below as one of nonfeasance, and not misfeasance.

---

employer's duty to control the conduct of a third person, such as its employee, or to protect a plaintiff-spouse from the conduct of others, including her employee-spouse)).

[28] *Id.* at *11–12.

[29] *Riedel*, 968 A.2d at 19, 23.

[30] RESTATEMENT § 302 cmt. a.

14

Acknowledging that "the trial judge did not explicitly address whether Mrs. Riedel alleged misfeasance or nonfeasance," this Court observed that the Superior Court "considered Mrs. Riedel's claim in a manner consistent with the (Second) Restatement's analysis of nonfeasance."[31] This Court agreed with the Superior Court's conclusion that the allegations of misconduct Mrs. Riedel presented were "fairly described as allegations of nonfeasance."[32]

This Court determined that before the Superior Court, "Mrs. Riedel characterized ICI's alleged negligence as a failure either to prevent Mr. Riedel from taking asbestos home or to warn the Riedels of the dangers associated with Mr. Riedel wearing his work clothes home from the workplace."[33] Mrs. Riedel never argued to the Superior Court that ICI had committed some affirmative act that constituted misfeasance; rather, she "viewed ICI's negligence as a failure to control its employees," and sought to impose vicarious responsibility on ICI on the theory that "the principal, ICI, should be liable for the acts of its agent, Mr. Riedel."[34] She supported this argument with an analogy to case law recognizing, in certain circumstances, a psychiatrist's duty to protect third parties from his patient's conduct

---

[31] *Riedel*, 968 A.2d at 23.
[32] *Id.* at 18.
[33] *Id.* at 23.
[34] *Id.* at 24–25.

15

based on the special relationship between a doctor and patient.[35] She presented her take-home asbestos exposure claim in this way and distinguished it from the environmental exposure claims she brought against defendants other than ICI.[36]

This Court found that Mrs. Riedel had presented the "vastly different theory of negligence" that "'ICI's asbestos release on its employee's clothes'" is, in fact, an act of misfeasance, just like the "'release of a deadly toxin via another vector such as the air . . . .'"[37] But this Court was "not persuaded by Mrs. Riedel's assertion that she pled misfeasance," because although Mrs. Riedel's complaint alleged "misfeasance in relation to Mr. Riedel (by exposing him to asbestos)," which she claimed occurred because ICI "'controlled the safety and working conditions and/or promoted the use of asbestos, at the sites where [her] husband worked,'" the complaint's allegation that ICI "fail[ed] to control Mr. Riedel" constituted "nonfeasance in relation to Mrs. Riedel . . . ."[38] For those reasons, the Court declined to consider Mrs. Riedel's argument on appeal that "ICI's affirmative release of asbestos into the environment constitute[d] misfeasance," and held that under Supreme Court Rule 8, she was procedurally barred from arguing a theory of misfeasance for the first time on appeal.[39]

---

[35] *Id.* at 24–25 (citing *Tarasoff v. Regents of the Univ. of Cal.*, 551 P.2d 334 (Cal. 1976); *Naidu*, 539 A.2d 1064)).

[36] *Id.* at 24.

[37] *Id.* at 23–24 (internal citations omitted).

[38] *Id.* at 25.

[39] *Id.* at 23, 25.

Having held that Mrs. Riedel had only fairly presented a nonfeasance theory, the Supreme Court then addressed whether the Superior Court had properly rejected her assertion that as a spouse of an ICI employee, she was in a special relationship with it. The Court affirmed because the only basis Mrs. Riedel offered to establish a special relationship, "ICI's occasional publication of a newsletter providing tips for its employees and their families to stay safe at home," was not "evidence that ICI undertook to warn its employees' families of all dangers" and was otherwise insufficient to establish a special relationship.[40]

## C.

Two years later, in *Price*, another take-home asbestos exposure case, this Court considered a similar set of facts in the context of Patricia Price's appeal of the Superior Court's denial of her motion to amend her complaint to plead a theory of misfeasance, instead of nonfeasance, which she filed after this Court issued its decision in *Riedel*.[41] Mrs. Price had sued the DuPont Company, alleging that her exposure to take-home asbestos during the 34 years her husband worked at a company facility caused her to develop bilateral interstitial fibrosis and bilateral pleural thickening of the lungs.[42] Mrs. Price alleged that "DuPont knew or should have know[n] that persons within the Price home would be exposed to these asbestos

---

[40] *Id.* at 26–27.
[41] *Price*, 26 A.3d at 163–64.
[42] *Id.*

17

fibers"; "that 'it was foreseeable that its employees' families . . . would handle the clothing'"; and "that DuPont's conduct was 'affirmative, active misconduct because it was only through the direct orders and desires of the DuPont Company that the fibers were released within its plant and . . . escaped beyond the plant to pollute" her home.[43] The Superior Court denied the motion to amend as futile because her proposed amendments sought to reshape her claim of nonfeasance into one of misfeasance, even though the underlying negligent conduct remained the same.[44] Mrs. Price appealed that decision to this Court.[45]

This Court was closely divided on the key legal question: is an employer who causes its employee to work with products that create asbestos dust that settles on the employee's clothes fairly charged with misfeasance or nonfeasance for that conduct when the asbestos dust harms a person who launders the employee's clothes? The majority of this Court embraced the nonfeasance answer, in a chain of reasoning that went this way.

In the first step, the *Price* majority found that *Riedel* held that a plaintiff who alleged that an employer's failure to prevent an employee "from taking asbestos

---

[43] *Price v. Anchor Packing Co.*, C.A. No. 09C-06-084 ASB, 2009 WL 4017549, at *3 (Del. Super. Nov. 20, 2009) (citing Report of the Special Master Appointed in Superior Court Asbestos Litigation (Aug. 25, 2009)).

[44] *Id.*

[45] *Price*, 26 A.3d at 163.

fibers home or to warn" the employee and his spouse of the dangers of asbestos had a viable claim for nonfeasance.[46] To this point, the *Price* majority stated that although this Court in *Riedel* "did not decide the substantive issue directly, but rather, affirmed the judgment pursuant to Supreme Court Rule 8," the *Riedel* Court "did explain unequivocally that the facts underlying Mrs. Riedel's claim constituted nonfeasance" when it stated:

> At trial, Mrs. Riedel characterized ICI's alleged negligence as a failure either to prevent Mr. Riedel from taking asbestos home or to warn the Riedels of the dangers associated with Mr. Riedel wearing his work clothes home from the workplace. That is, to the trial judge Mrs. Riedel presented a theory of nonfeasance.[47]

In the second step, the *Price* majority observed that "[t]he conduct Mrs. Price complains of here is indistinguishable from the conduct about which Mrs. Riedel complained."[48] Those allegations were that:

> (1) Mr. Price, an employee of DuPont, worked with and around products containing asbestos for 34 years, (2) asbestos fibers settled on his skin, clothing, and vehicle, (3) DuPont did not provide locker rooms, uniforms, or warnings to the Prices regarding the dangers of asbestos, (4) DuPont did not prevent Mr. Price from transporting the asbestos fibers home on his skin, clothing, and vehicle, and (5) Mrs. Price, because she lived with Mr. Price and washed his clothes, developed several diseases from her exposure to the asbestos he brought home from work.[49]

---

[46] *Id.* at 169–70.
[47] *Id.* at 168 (quoting *Riedel*, 968 A.2d at 23).
[48] *Id.*
[49] *Id.* at 169.

The *Price* majority found that "[t]hese allegations generate a reasonable inference that DuPont wrongfully (negligently) failed either to prevent Mr. Price from taking asbestos home or to warn the Prices of the dangers associated with Mr. Price wearing his work clothes home. That, according to our *Riedel* opinion, is pure nonfeasance—nothing more."[50]

In the final step, the *Price* majority determined that because "nonfeasance and misfeasance describe substantively different conduct, nonfeasance cannot constitute misfeasance."[51] That is, the *Price* majority held that conduct could not be both misfeasance and nonfeasance; it had to be one or the other. The *Price* majority then concluded that "Dupont's failures to prevent Mr. Price from taking asbestos fibers home or to warn the Prices about the dangers of asbestos do not rise to the level of affirmative misconduct required to allege a claim of misfeasance. No amount of semantics can turn nonfeasance into misfeasance or *vice versa*."[52]

Based on this reasoning, the *Price* majority affirmed the Superior Court's denial of Mrs. Price's motion to amend her complaint because her proposed amended complaint still pled nonfeasance, and she had not offered any new facts

---

[50] *Id.*
[51] *Id.* at 167–68.
[52] *Id.* at 169.

20

sufficient to establish the existence of a special relationship, as required to sustain an allegation of nonfeasance against her husband's employer.[53]

The *Price* dissent, by contrast, had a different read of what this Court decided in *Riedel*, and argued that because "[t]he *Riedel* Court never decided whether Riedel's claim was properly characterized as nonfeasance," the majority had transformed a decision applying a procedural rule "into a decision on the very issue *Riedel* did not consider—whether a so-called 'take home' asbestos claim is properly characterized as a claim of misfeasance or nonfeasance."[54] The *Price* dissent, considering the substantive issue it found that *Riedel* had not addressed and drawing on examples from the Restatement and Prosser and Keeton's treatise, illustrated the typical fact pattern of a situation constituting nonfeasance:

> A classic example of conduct properly analyzed as nonfeasance arises when a passerby sees someone drowning but does nothing to aid the victim. Absent a special relationship, the law generally would not impose a duty on the passerby because he did not create a new risk of harm to the swimmer. Instead, the swimmer fell "into peril through no conduct of the actor." The passerby merely failed to act; he made the swimmer's situation no worse.[55]

Citing the distinction between misfeasance and nonfeasance articulated by Prosser and Keeton, the *Price* dissent contended that "DuPont's conduct is properly

---

[53] *Id.* at 169–70.
[54] *Id.* at 170–71 (Berger, J., dissenting).
[55] *Id.* at 171 (citing RESTATEMENT § 314 cmts. c & e; and Keeton et al., *Prosser and Keeton on the Law of Torts*, § 56, at 373).

21

analyzed as misfeasance because, unlike the passerby, DuPont performed an 'affirmative act' that 'created a new risk of harm,'" which was "the release of asbestos in the workplace," conduct that precluded any argument "that the employee came into peril through no conduct of DuPont, or that DuPont 'made [the employee's] situation no worse.'"[56] The *Price* dissent found support for this conclusion in the fact that "[o]ther jurisdictions that have addressed whether 'take home' asbestos claims constitute misfeasance or nonfeasance have found them to constitute misfeasance."[57]

The *Price* dissent rejected the majority's focus on remedial efforts like "DuPont's failure to provide Mr. Price a breathing mask," and argued that "[r]egardless of the remedial steps [DuPont] might have taken, the fact remains that [DuPont]'s release of asbestos into the workplace caused harm to Mr. Price," making that conduct misfeasance that "is not transformed into nonfeasance" by identifying actions that DuPont could have taken to remedy Mr. Price's exposure after the fact of his exposure.[58] In support of its reasoning, the dissent cited § 284(a) of the

---

[56] *Id.* (alteration in original) (citing Keeton et al., *Prosser and Keeton on the Law of Torts*, § 56, at 373).

[57] *Id.* at 172 (first citing *Rochon v. Saberhagen Holdings, Inc.*, 140 Wash. App. 1008, 2007 WL 2325214, at *3 (Wash. Ct. App. Aug. 13, 2007) ("Here, it is Kimberly-Clark's own affirmative acts—operating its own factory in an unsafe manner—that allegedly caused Mrs. Rochon's illness, not either a failure to act or the act of a third."); and then citing *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 354–60 (Tenn. 2008)).

[58] *Id.* at 171–72.

Restatement, under which negligent conduct may be "an act which the actor as a reasonable man should recognize as involving an unreasonable risk of causing an invasion of an interest of another . . . ."[59]

The *Price* dissent acknowledged that DuPont "harmed Mr. Price directly, without any act by another," and "harmed Mrs. Price only because Mr. Price unknowingly brought the asbestos home with him," but asserted that the "same analysis should apply to Mrs. Price's claim" because "that difference has no bearing on whether DuPont acted or failed to act."[60] Rather, the dissent argued, Mrs. Price's exposure to harm through her husband, rather than by direct exposure, "bears on the separate question of whether it was foreseeable that [DuPont's] conduct would harm Mrs. Price," not on whether DuPont's conduct constituted misfeasance in the first place.[61] In the dissent's view, the question of foreseeability was key because

> [c]onsistent with the Restatement, Delaware tort law uses foreseeability to determine whether one person owes a duty to another. Thus, whether the law will impose a duty on DuPont will turn on whether the harm to Mrs. Price was foreseeable—whether DuPont should have recognized that its release of asbestos created an "unreasonable risk of [invading]" Mrs. Price's interests.[62]

---

[59] *Id.* & nn.47–49 (citing RESTATEMENT § 284(a); and *Sirmans v. Penn*, 588 A.2d 1103, 1107 (Del. 1991) (defining foreseeability as "the duty to protect against 'events reasonably foreseeable,'" rather than events 'probable to happen'" (internal citations omitted))).

[60] *Id.* at 172.

[61] *Id.*

[62] *Id.* (citing *Sirmans*, 588 A.2d at 1107 (Del. 1991); *Delmarva Power & Light Co. v. Burrows*, 435 A.2d 716, 719 (Del. 1981); RESTATEMENT § 284(a)).

The dissent summarized Mrs. Price's amended complaint as alleging:

> (1) Mr. Price worked at DuPont; (2) DuPont knew or should have known asbestos was dangerous to human health; (3) DuPont knew or should have known asbestos had a tendency to release fibers that would be transported to its employees' homes; (4) DuPont exposed Mr. Price to asbestos despite that knowledge; and (5) it thereby knowingly and wrongfully exposed Mrs. Price to asbestos, which made her ill.[63]

It concluded that "[a]ssuming those allegations to be true, the injury to Mrs. Price was foreseeable," requiring reversal of the Superior Court's decision.[64]

## II.

*Riedel*, and even more particularly, *Price*, thus framed the key basis for the Manufacturers' challenge to the viability of Mrs. Ramsey's complaint in the motions for summary judgment below. Because the Manufacturers only sold products to the Employer, they argued that they were even more distant from his wife, Mrs. Ramsey, than the Employer, and that as a matter of simple logic, they could not owe a duty to her if the Employer did not.[65] The Manufacturers construed *Price* and *Riedel* as holding that the "failure to prevent an employee from taking home asbestos fibers or warning of the dangers of asbestos 'do[es] not rise to the level of affirmative

---

[63] *Id.* at 173.

[64] *Id.*

[65] App. to Opening Br. at A59 (Herty Mot. for Summ. J.) ("Delaware does not impose liability on an employer for injuries sustained by the spouse resulting from the employee's use and/or exposure to a manufacturer's asbestos-containing product during the course of his/her employment. Logic, therefore, suggest[s] that, due to the even further attenuated relationship between Herty and Mrs. Ramsey, no liability should exist.").

misconduct required to allege a claim of misfeasance,'"[66] and that Mrs. Ramsey's allegations that they failed to warn of the dangers of their products constituted nonfeasance.[67] The Manufacturers argued that, under *Price* and *Riedel*, where an employer or a manufacturer "'merely omits to act,'"[68] there is no duty absent a special relationship,[69] and because Mrs. Ramsey had not established the existence of a special relationship, they owed her no duty.[70]

Mrs. Ramsey argued in response that the Manufacturers' position was grounded in a categorical legal error because the conclusions of *Price* and *Riedel*, dealing with an employer's possible liability, were inapplicable to asbestos product manufacturers because "relationship has no significance to a manufacturer or distributor of a product."[71] Distinguishing her claim against the Manufacturers from the claims against employers in *Price* and *Riedel*, Mrs. Ramsey clarified that she had not alleged "that [the Manufacturers] failed to warn [her] about a danger someone else created, as in *Riedel* and *Price* but that [the Manufacturers] made and sold a dangerous product without warning and placed it into the stream of commerce which injured [her]."[72]

---

[66] *Id.* at A60 (citing *Price*, 26 A.3d at 167–69).
[67] *Id.*
[68] *Id.*
[69] *Id.* (citing *Price*, 26 A.3d at 167–69).
[70] *Id.* at A62.
[71] *Id.* at A277 (Ramsey Summ. J. Resp. to Herty).
[72] *Id.* at A731–32 (Ramsey Summ. J. Resp. to Hollingsworth and Vose).

But rather than argue that this distinction required that the Manufacturers' liability be determined only by principles of negligence-based products liability law, Mrs. Ramsey first sought to show that her theory of harm was consistent with *Price* and *Riedel* by arguing that the Manufacturers "affirmatively acted to make and release into the stream of commerce asbestos-containing products," thereby committing misfeasance that, under *Price* and *Riedel*, meant that the Manufacturers' "duty to others is automatic."[73]

Next, in defining the Manufacturers' duty arising from their acts of misfeasance, Mrs. Ramsey looked to § 388 of the Restatement and our case law defining a manufacturer's duty to warn.[74] Under these principles, the Manufacturers' act of manufacturing a dangerous asbestos product created a duty to warn Mrs. Ramsey, a foreseeable plaintiff, of the danger of exposure to that product.[75] In other words, Mrs. Ramsey argued that an asbestos product manufacturer was, by dint of the simple fact that it was a manufacturer, more

---

[73] *Id.* at A278 (Ramsey Summ. J. Resp. to Herty) (citing *Price*, 26 A.3d at 167).
[74] *Id.* at A278–79 (citing *Graham v. Pittsburgh Corning Corp.*, 593 A.2d 567, 568 (Del. Super. 1990) ("A duty to warn arises when a manufacturer and distributor of a product knows, or as a reasonably prudent manufacturer and distributor should know, (when) it involves dangers to users, places that product on the market."); and citing *Sirmans*, 588 A.2d at 1107); *id.* at A733–34 (Ramsey Summ. J. Resp. to Hollingsworth and Vose) (citing RESTATEMENT § 388 cmt. d (explaining that the duty to warn extends to third persons that a manufacturer should expect will be endangered by its product); and citing *In re Asbestos Litig. (Colgain)*, 799 A.2d 1151, 1152 (Del. 2002) (noting that a manufacturer's duty to warn depends on whether it had knowledge of the dangers of its product)).
[75] *Id.* at A277 (Ramsey Summ. J. Resp. to Herty).

responsible to employees and others exposed to its asbestos products than the employers who purchased and used the asbestos products.[76]  She did so despite the reality that the Manufacturers were not in any direct relationship with Mr. Ramsey.[77]

Straining to escape the negative consequences of *Price* and *Riedel* for her case, Mrs. Ramsey effectively hedged her argument, urging the Superior Court to disregard as inapplicable to her claims the threshold misfeasance-nonfeasance question because "privity and special relationship[s] are not required in product liability law,"[78] while also arguing that, because the Manufacturers' conduct constituted "acts that were active, not passive; misfeasance, not nonfeasance,"[79] they "had a duty under Delaware law to protect others from harmful events reasonably foreseeable."[80]  Mrs. Ramsey thus attempted to situate her claims in a products liability analysis and distance them from *Price* and *Riedel*, while also showing that finding that the Manufacturers' actions constituted misfeasance was consistent with those cases.  Mrs. Ramsey's strategy took into account the reality that our Superior

---

[76] *Id.* at A277–78.
[77] *Id.* at A277.
[78] *Id.* at A740 (Ramsey Summ. J. Resp. to Hollingsworth and Vose).
[79] *Id.* at A278–79 (Ramsey Summ. J. Resp. to Herty) ("Defendant affirmatively acted to make and release into the stream of commerce asbestos-containing products. . . . These acts were active, not passive; misfeasance, not nonfeasance.  Since these acts were misfeasance, Defendant's duty to others is automatic.").
[80] *Id.* at A279.

Court had to follow *Price* and *Riedel*, and that she therefore could only survive the Manufacturers' motions for summary judgment by navigating around them.

Presented with these arguments,[81] the Superior Court examined the holdings in *Price* and *Riedel*, extended the reasoning of those employer liability cases to Mrs. Ramsey's claim against the Manufacturers, and granted summary judgment in their favor, finding that the Manufacturers had not committed misfeasance as to Mrs. Ramsey, only nonfeasance, and did not owe Mrs. Ramsey a duty of care.[82]

In so doing, the Superior Court first reviewed our case law governing a manufacturer's duty of care and found that rather than arguing the Manufacturers owed her a duty of care under § 388, Mrs. Ramsey "cursorily cite[d] to a comment under this section," discussed distinguishable cases, and "fail[ed] to provide ample authority to support her argument that this general duty of care extends, *ipso facto*, to the context of take-home asbestos exposure cases involving manufacturers."[83]

---

[81] *Ramsey*, 2017 WL 465301, at *4, 7 ("[A]re *Price* and *Riedel* limited to take-home asbestos cases where the plaintiff-spouse alleges the *employer* failed to take adequate steps to protect the plaintiff? Or are they equally applicable to cases where a *manufacturer* supplies an asbestos containing product that poses a risk of household exposure to the employee's spouse?").

[82] *Id.* at *1. Herty moved for summary judgment on the issues of product nexus, strict liability, and civil conspiracy. Mrs. Ramsey did not contest the grant of summary judgment as to the latter two issues, and the trial court did not reach the product nexus issue because of its decision that Herty did not owe a duty of care. *Id.* at *1 n.2. Herty reasserts its product nexus argument on appeal. Herty Answering Br. at 42–45. In light of our decision to remand this case and the fact that the trial court did not consider that argument, we will not consider Herty's product nexus argument for the first time on appeal.

[83] *Id.* at *5.

Next, considering the applicability of *Price* and *Riedel* to the Manufacturers, the Superior Court focused its analysis on the nature of the relationship between the employer and the employee's spouse, noting that "[b]oth decisions appear to rest implicitly on the employer's role as a landowner and the employee's status as an invitee onto the employer's property."[84] The Superior Court observed that as to the employee, the employer's conduct—its "alleged failure to warn or make safe a dangerous condition on its property"—constituted misfeasance.[85] But the Superior Court found "that [the] same logic did not extend to the imposition of a duty on the employer to the employee's spouse," and "the employer's alleged 'conduct' towards the employee's spouse constituted claims of nonfeasance" because the employee's spouse "neither entered onto, nor lived next to, the employer's facility."[86] The Superior Court concluded that the "*Price* and *Riedel* Courts held that the employer did not engage in affirmative conduct that worked positive injury on the spouses of its employees; rather, they failed to act to protect a distant third party who never entered onto their property,"[87] and applied that conclusion to the claims of Mrs. Ramsey, who, like the plaintiffs in *Price* and *Riedel*, was not injured on the employer's property, but rather, by take-home asbestos transported there on her

[84] *Id.* at *6.
[85] *Id.* (citing *Riedel*, 968 A.2d at 25).
[86] *Id.*
[87] *Id.*

29

husband's uniform.[88] The Superior Court reasoned that recognizing a manufacturer's duty of care to an employee's spouse would create the "paradoxical result" that "the defendant with a closer relationship to the plaintiff," Mr. Ramsey's employer, "owes no duty of care . . . while a distant third party—the manufacturer— would be held to a general duty of care."[89] It thus declined to find that the Manufacturers owed Mrs. Ramsey a duty of care based on misfeasance, and granted the Manufacturers' motions for summary judgment because Mrs. Ramsey had not offered any facts establishing a special relationship sufficient to sustain her claims of nonfeasance.[90]

## III.

Before this Court, Mrs. Ramsey appeals the Superior Court's grants of summary judgment in favor of the Manufacturers, arguing that it erred in finding that the Manufacturers did not have a duty to warn of the dangers of their asbestos products under § 388.[91] In resolving the contending positions of the parties, it is useful to keep in mind certain principles of Delaware law that both parties accept.

For starters, it is plain that if the plaintiff in this case was Mr. Ramsey, and not his wife, he could state a claim against the Manufacturers for any harm resulting

---

[88] *Id.* at *6–7.
[89] *Id.* at *7.
[90] *Id.* at *8–9.
[91] Opening Br. at 16, 25–26.

from his own exposure to the asbestos in their products, despite the fact that none of them had a direct relationship with him.[92]

Under Delaware law, which embraces § 388 of the Restatement,[93] an asbestos product manufacturer whose products are later used in a facility can be held liable to an employee in that facility if the manufacturer has actual or constructive knowledge of the dangers of its product, has no reason to believe that users will realize the dangerous condition of the product, and does not warn users of the product's dangerous condition.[94] But, precisely because it is impractical to expect a manufacturer to warn employees it does not employ and does not know, a manufacturer can discharge its duty to warn, and thereby avoid liability, by warning and providing safe handling instructions to the employer to whom it sold the dangerous product.[95] "'Modern life would be intolerable unless one were permitted

---

[92] *See Graham*, 593 A.2d at 569–71 (tracing the jurisprudential steps taken by Delaware courts resulting in giving standing to an employee harmed by asbestos exposure at the workplace to sue the manufacturer who provided it to his employer in tort for its failure to take reasonable measures to ensure the safety of those who worked with its products, despite the lack of privity between the employee and the manufacturer).

[93] *Id.* at 569 (reviewing various formulations of a manufacturer's duty to warn and concluding that "Delaware Courts and the *Restatement* have accepted the reasonable man standard for determining the duty of a manufacturer of a product to warn users," as embodied in § 388 of the Restatement).

[94] RESTATEMENT § 388; *Wilhelm v. Globe Solvent Co.*, 373 A.2d 218, 223 (Del. Super. 1977).

[95] *Wilhelm*, 373 A.2d at 223 ("[I]n a commercial setting the manufacturer or seller has only a duty to warn those employees of the buyer to whom it has access." (citing *Burton v. L.O. Smith Foundry Prods. Co.*, 529 F.2d 108 (7th Cir. 1976) (holding that because the defendant had no control over the machine being used or the surrounding work space, the plaintiff's employer would have to provide the warnings); and citing 63 Am. Jur. 2d, Products Liability § 47 ("If the manufacturer has no duty to warn a purchaser who is aware of the product's danger, the manufacturer has no duty to warn the employee of such purchaser.")).

to rely to a certain extent on others' doing what they normally do, particularly if it is their duty to do so.' An employer has a duty as well as an economic interest in not exposing its employees to unnecessary dangers."[96] Thus,

> when a supplier provides a product it knows to be dangerous to a purchaser/employer whom the supplier knows or reasonably believes is aware of that danger, there is no duty on the part of the supplier to warn the employees of that purchaser unless the supplier knows or has reason to suspect that the requisite warning will fail to reach the employees, the users of the product.[97]

Because it is critical to developing fair and efficient liability rules for asbestos product manufacturers to understand the key role of employers, it is helpful to consider how the principles of the common law and the Restatement address the Employer's responsibility to provide employees like Mr. Ramsey with a safe workplace, and to warn them of any dangers attendant to their responsibilities. In so doing, we acknowledge the important complicating reality that in Delaware, as in many states,[98] an employer has no exposure in tort to employees for workplace injuries, even those causing death.[99] Instead, an employer is expected to provide

---

[96] *In re Asbestos Litig. (Mergenthaler)*, 542 A.2d at 1211 (quoting RESTATEMENT § 388 cmt. n).
[97] *Id.* at 1212.
[98] *Rafferty v. Hartman Walsh Painting Co.*, 70 A.2d 157, 159 (Del. 2000) ("Workers' Compensation statutes similar to the Delaware Act were adopted in most states early in the last century in response to the failure of the common law to provide a quick, practical, cost effective remedy for on the job injuries suffered by workers.").
[99] 19 *Del. C.* § 2304 ("[E]very employer and employee . . . shall be bound . . . by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies.").

workmen's compensation for those injuries, regardless of fault,[100] and the employee

relinquishes his right to bring a negligence suit against the employer.[101] But, as in

corporate law, the fact that a party is not exposed to damages liability does not mean

that the party has no duty.[102] Under both common law and statutory principles, an

employer has a responsibility to take reasonable measures to provide a safe

workplace for its employees.[103]

The established nature of this basic duty is underscored by cases addressing

the duty of an employer to provide a safe workplace to the employees of independent

---

[100] *Rafferty*, 70 A.2d at 159 (noting that under Delaware's Workmen's Compensation statute, "compensation was to be promptly awarded to a worker for a job related injury without the worker being required to prove any fault").

[101] *Kofron v. Amoco Chem. Corp.*, 441 A.2d 226, 230 (Del. 1982) ("[A]ll employee actions against employers for work-related injuries based on any degree of negligence, from slight to gross, are within the exclusive coverage of the Workmen's Compensation Law and may not be maintained under the common law.").

[102] It is understood in corporate law that directors, like all fiduciaries, have a normative duty to act reasonably under the circumstances confronting them at all times. That duty exists regardless of whether, for policy reasons, corporate law holds them responsible in monetary damages only for actions that are grossly negligent, or, if the charter provides, not at all for breaches of their duty of care. *See* Melvin Aaron Eisenberg, *The Divergence of Standards of Conduct and Standards of Review in Corporate Law*, 62 FORDHAM L. REV. 437, 439–50 (1993) (distinguishing between a standard of conduct, which states how a person should normatively act, and a standard of review, which states the test applied by a court in imposing liability, and discussing the use of the more stringent gross negligence standard of review to establish liability in duty of care cases).

[103] *Powell v. Interstate Vendaway, Inc.*, 300 A.2d 241, 245 (Del. Super. 1972) ("[T]he common law duty of an employer to its employee [is] to provide a safe working place for the employee."); *Toll Bros., Inc. v. Considine*, 706 A.2d 493, 494 (Del. 1998) (a violation of OSHA regulations may constitute evidence of negligence); David P. Currie, *OSHA*, 1 AM. BAR FOUND. 1107, 1140 (1976) ("OSHA imposes two essential obligations on the employer. One is simply to 'comply with occupational safety and promulgated under this chapter.' The other is to furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause [them] death or serious physical harm.").

contractors working on its premises. Under decisions of our courts embracing § 343 of the Restatement,[104] an employee of an independent contractor working in the workplace of another employer may hold that employer liable when the independent contractor employee is "injured as a result of the work (and negligence) of others including, arguably, the landowner," unless the independent contractor employee is "injured by the very hazards created by their own work on the property—the work they were contracted by the landowner to perform."[105] This limitation is based on the reality that "the contractor possesses superior knowledge of the dangers inherent in the work" it was hired to perform.[106]

Together, these principles explain why an employer has an independent duty to warn its own employees of the dangers of exposure to asbestos products. First, the employer has a "common law duty . . . to provide a safe working place for the employee."[107] As a landowner, the employer also has an obligation to create a safe

---

[104] RESTATEMENT § 343 ("A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.").

[105] *In re Asbestos Litig. (Wenke)*, C.A. Nos. 03C-10-277, 03C-05-021, 2007 WL 1651964, at *10 (Del. Super. May 31, 2007).

[106] *Id.* at *6.

[107] *Powell*, 300 A.2d at 245.

34

workplace for business invitees on its premises, such as its own employees.[108] And just as the independent contractor employer is uniquely responsible for the injuries of its independent contractor employees where those injuries result from a hazard the independent contractor created by virtue of the work it was contracted to perform, so too would an employer be responsible for injuries to its employees that result from the employer's creation of a danger on its premises, including its use of dangerous asbestos products in an unsafe manner.[109]

For all these reasons, it is plain that the law expects employers to take reasonable steps to provide a safe workplace to all who work on their premises, including their own employees, and to provide them with adequate safety instructions and warnings, including any warnings relating to the dangers of working with asbestos products and handling clothes covered in asbestos dust.

In light of these principles, the conundrum that the Manufacturers complain about in this case cannot rest on any argument that they did not owe a duty to warn the Employer of the dangers of their products, including the dangers that could ensue

---

[108] RESTATEMENT § 314A & cmt. a (noting that an employer-employee relationship gives rise to a similar duty to aid or protect as that of a landowner-invitee relationship).

[109] *Fehl v. J.W. Greer, Inc.*, 1981 WL 383065, at *2 (Del. Super. Aug. 6, 1981) (considering a manufacturer's indemnification claim against an employer and finding that "[t]he duty to use the manufacturer's product in a safe and proper manner is a duty owed to the employee, not to the manufacturer. . . . [The employer]'s duty of proper use and care of the [manufacturer's product] runs to its employees . . . not to the manufacturer . . . . The breach of such duty has been satisfied by payment of workmen's compensation benefits").

if clothes exposed to their asbestos products were not laundered in a manner that protected the person doing the laundering. Under law the Manufacturers do not dispute,[110] they owed that duty. Granted, they would also be able to argue that if they warned the Employer as their customer and as the employer who determined how their asbestos products were to be used, then they were entitled to rely on the Employer's duty to take heed of that warning and to share it with its employees as a defense against any suit against them.[111]

Instead, the conundrum that the Manufacturers point to is this: how can a manufacturer be held liable for failing to provide a warning to an employee's spouse if the employer is immune for its own failure to do so?[112] Or to be even more specific, if Mrs. Ramsey could not recover against the Employer, how can she

---

[110] Hollingsworth and Vose Answering Br. at 23–24 (explaining that § 388 imposes liability for failure to warn those who are expected to use the product or in the vicinity of the expected use); Herty Answering Br. at 32–34 (same).

[111] *See Mergenthaler*, 542 A.2d 1205. *But see* Opening Br. at 26–27 n.120 (noting that the Manufacturers "did not raise the sophisticated purchaser defense below, or submit any evidence that they relied on [the Employer]'s alleged knowledge regarding the dangers of asbestos").

[112] Hollingsworth and Vose Answering Br. at 27 ("If an employer does not stand in a special relationship with an employee's spouse, as held in *Price* and *Riedel*, then [Hollingsworth and Vose], as a mere supplier of a component part to the employer, certainly cannot be deemed to have a special relationship with the employee's spouse."); Herty Answering Br. at 30 ("Plaintiff would improperly hold Herty liable for Mrs. Ramsey's injuries when her own family members' employer, who specifically sought out Herty to produce a specified material in a Haveg-purchased manufacturing process, owed no duty to her. To allow this alternative would create a separate class of non-employee family members, with greater rights than those owed of a manufacturing-employer to its employees.").

recover against the Manufacturers who had no control over Mr. Ramsey's exposure and no relationship with him?

For her part, Mrs. Ramsey makes a different policy point. She stresses the ordinary reality upon which her claim is based, which is that members of an employee's household may launder his clothes.[113] And if the conduct of manufacturers and employers causes asbestos to go home on employees' clothes without any warning or safe laundering instructions, it is foreseeable that people like Mrs. Ramsey will be injured. Recognizing the strength of the argument that the Manufacturers are less culpable than the Employer, who controlled her husband's exposure, Mrs. Ramsey argues that to the extent *Price* and *Riedel* get in the way, they should be overruled.[114] Precisely because the employer is the active force in determining the circumstances in which employees use and are exposed to asbestos products, Mrs. Ramsey argues that this Court erred in finding that cases like this involve nonfeasance, not misfeasance.[115]

These are all good points, and they convince us that we cannot avoid Mrs. Ramsey's request that we revisit our holdings in *Price* and *Riedel*, lest our law i) subject manufacturers to liability in circumstances where employers should also

---

[113] Opening Br. at 20–21, 24–25.
[114] *Id.* at 39–40.
[115] *Id.*

be potentially responsible; and ii) deny recovery to plaintiffs in circumstances where they were exposed to serious harm, and the responsible parties failed to take reasonable care to prevent that harm.[116] We do not lightly revisit these prior decisions, and respect that they were grounded in a well-justified concern that there must be clear limits to the duty owed by employers and manufacturers in cases like these. But that concern, in our view, can be addressed by establishing with clarity the scope of the duty that manufacturers and employers owe in this context, and by building on our law's long-standing recognition that manufacturers may discharge their duty to warn by giving an adequate warning to the employer, who is presumed to owe its employees a duty of care.[117] By parity of reasoning, an employer must have a duty to pass that warning on or otherwise protect its employees from the risk of harm arising from laundering asbestos-covered clothes, or the limitation on the manufacturer's duty makes no principled sense. Although an employer should not be exposed to liability to its employee's spouse if it discharged its duty to instruct the employee about what was necessary to launder his clothes safely so that he could protect himself and anyone he entrusted with that task, on what principled basis should the employer be immune if it never warned the employee?

---

[116] *Id.* at 37–38.
[117] *Mergenthaler*, 542 A.2d at 1211–12.

Put simply, a fair and efficient accountability system can be established by limiting the duty of asbestos product manufacturers and employers in take-home asbestos exposure cases to providing fair warning about the dangers of laundering to those with whom they have the most proximate relationship. Manufacturers may discharge their duty by warning employers, and employers may discharge their duty by warning employees. If the manufacturer has done so, a spouse of an employee may not recover from the manufacturer. If the employer has done so and given the employee the information needed to protect his spouse, the spouse may not recover from the employer. But if the contrary is the case, and the asbestos product manufacturer and the employer's failure to warn left the employee without the information needed to protect his spouse, his spouse should be entitled to recover if she can prove the other elements of her claim.

In her complaint and in her arguments below and to this Court, Mrs. Ramsey focused on two related, but distinct questions. The first is whether she is a foreseeable plaintiff to which the Manufacturers owed a duty to "take all reasonable precautions to protect [her] and persons like her against an event, serious asbestos-related harm, i.e., asbestos-related lung cancer, that a reasonably prudent [manufacturer] would protect against"?[118] The second is what was the duty of care the Manufacturers had to fulfill in terms of product warnings and safe laundering

---

[118] Opening Br. at 31.

instructions?  Mrs. Ramsey argued below that the Manufacturers' duty of care under § 388 required them to warn her directly of the dangers of laundering Mr. Ramsey's work clothes.  We agree with Mrs. Ramsey's first argument, but find that her second argument goes too far.

As we will discuss, Mrs. Ramsey is a plaintiff foreseeably affected by the Manufacturers' actions and should be entitled to recover.  But that does not mean that her claim can be fairly grounded in a requirement that the Manufacturers, or even the Employer, had a duty to warn her directly.  To the extent that Mrs. Ramsey argues that the "reasonable precautions"[119] required of the Manufacturers or the Employer included inquiring into employees' household dynamics, determining who is responsible for doing the family laundry, and delivering to that person a personalized warning, we find that those steps are unreasonable and not required by law.  Instead, the Manufacturers' reasonable duty of care only required them to provide adequate warnings and safe laundering instructions to the Employer so it could provide this information to its employees in a manner tailored to their work circumstances and exposure to the Manufacturers' asbestos products.

We now explain why this result makes sense in view of established principles of negligence liability, starting with those applicable to manufacturers.

---

[119] *Id.*

**IV.**

Under § 388 of the Restatement and Delaware law, a manufacturer has a duty to warn users of the dangerous nature of its products:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
>
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
>
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.[120]

This duty extends "not only to those for whose use the chattel is supplied but also to third persons whom the supplier should expect to be endangered by its use,"[121] which may include "persons who have no connection with the ownership or use of the chattel itself."[122]  The manufacturer's duty is "'dependent on whether it

---

[120] RESTATEMENT § 388; *Walls v. Ford Motor Co.*, 160 A.3d 1135, 2017 WL 1422626, at *2 (Del. Apr. 21, 2017) (TABLE) ("'Among the essential elements that a plaintiff must prove in a negligence-based products liability case is that the defendant had a duty to warn of dangers associated with its product.'" (quoting *Colgain*, 799 A.2d at 1152)).

[121] RESTATEMENT § 388 cmt. d.

[122] *Id.* § 395 cmt. i; *id.* § 395 cmt. k ("The manufacturer may, however, reasonably anticipate other uses than the one for which the chattel is primarily intended.  The maker of a chair, for example, may reasonably expect that some one will stand on it; and the maker of an inflammable cocktail robe may expect that it will be worn in the kitchen in close proximity to a fire.").

had knowledge of the hazards associated with its product.'"[123] "[T]he standard for determining the duty of a manufacturer to warn is that which a reasonable (or reasonably prudent) person engaged in that activity would have done, taking into consideration the pertinent circumstances at that time."[124] And even where that knowledge exists, liability is imposed only where the manufacturer had no reason to think that the users of its products would recognize the danger, and it fails to exercise reasonable care in warning users of the product's dangerous nature.[125]

These principles raise, as we have noted, the related questions of whether someone like Mrs. Ramsey is a foreseeable plaintiff, and if so, what is the duty of

---

[123] *Walls*, 2017 WL 1422626, at *2 (quoting *Colgain*, 799 A.2d at 1152); *Brower v. Metal Indus., Inc.*, 719 A.2d 941, 945 (Del. 1998) (citing with approval the Virginia Supreme Court's reasoning in *Jeld-Wen, Inc. v. Gamble*, 501 S.E.2d 393, 397 (Va. 1998), that "[c]ommon knowledge of a danger from the foreseeable misuse of a product does not alone give rise to a duty to safeguard against the danger of that misuse. To the contrary, the purpose of making the finding of a legal duty as a prerequisite to a finding of negligence, or a breach of implied warranty, in products liability 'is to avoid the extension of liability for every conceivably foreseeable accident, without regard to common sense or good policy'").
[124] *Graham*, 593 A.2d at 571.
[125] RESTATEMENT § 388 cmt. b ("[O]ne who supplies a chattel for another to use for any purpose is subject to liability for physical harm caused by his failure to exercise reasonable care to give to those whom he may expect to use the chattel any information as to the character and condition of the chattel which he possesses, and which he should recognize as necessary to enable them to realize the danger of using it."); *Wilhelm*, 373 A.2d at 223 ("[A] duty to warn arises when a manufacturer or seller of a product which, to his actual or constructive knowledge, involves danger to users, places the product on the market."); *Graham*, 593 A.2d at 571 ("[T]he standard for determining the duty of a manufacturer to warn is that which a reasonable (or reasonably prudent) person engaged in that activity would have done, taking into consideration the pertinent circumstances at that time.").

42

care fairly expected of an asbestos product manufacturer in addressing the potential harm to persons like her? We address these issues in turn.

### A.

Delaware recognizes that an employee's exposure to asbestos in the workplace is a reasonably foreseeable harm that gives rise to a duty of care. Just as exposure to asbestos dust when directly handling asbestos products is reasonably foreseeable, so too is exposure when completing the quotidian task of laundering a dusty uniform in preparation for another day of work.[126] When uniforms come home covered in dust, more frequent laundering, not less, would seem to be required.

It is likewise foreseeable that an employee who wears his uniform home may not be the person in his household who does the family laundry the most, making the most natural class of persons to be exposed to harmful asbestos dust, other than the employee himself, those in the employee's household who launder the employee's dusty uniform.[127] This precise risk of harm—exposure to "the release

---

[126] *See Stegemoller v. ACandS, Inc.*, 767 N.E.2d 974, 976 (Ind. 2002) ("The normal, expected use of asbestos products entails contact with its migrating and potentially harmful residue. . . . Here, the reasonably expected use of asbestos products encompasses the cleansing of asbestos residue from one's person and clothing at the end of the workday."); *Kesner v. Superior Court*, 384 P.3d 283, 293 (Cal. 2016) ("It is a matter of common experience and knowledge that dust or other substances may be carried from place to place on one's clothing or person, as anyone who has cleaned an attic or spent time in a smoky room can attest.").

[127] *See Olivo v. Owens–Ill., Inc.*, 895 A.2d 1143, 1149 (N.J. 2006) ("It requires no leap of imagination to presume that during the decades of the 1940's, 50's, 60's, and early 1980's when [the employee] worked as a welder and steamfitter either he or his spouse would be handling his

of airborne asbestos fibers" when laundering "asbestos contaminated clothing"—was recognized by, among other industry resources,[128] the 1972 OSHA guidelines that established requirements for safe laundering of clothing exposed to asbestos products,[129] as well as specific measures employers must take to limit employees' transport of asbestos dust on their work uniforms outside of the workplace.[130]

Because the risk of harm from take-home asbestos exposure when laundering asbestos-covered clothing is reasonably foreseeable, a plaintiff in Mrs. Ramsey's position has a viable claim against a manufacturer who fails to warn and provide safe laundering instructions to an employer that exposes its employees to the manufacturer's asbestos products.

## B.

Under Delaware's "sophisticated purchaser" defense, and subject to the requirements of reasonableness and good faith, a manufacturer may satisfy its duty

---

clothes in the normal and expected process of laundering them so that the garments could be worn to work again.").

[128] *See* Opening Br. at 13–15 (describing primary source documentation indicating that through the first half of the twentieth century, protective measures were recommended and implemented to prevent take-home asbestos exposure).

[129] Standard for Exposure to Asbestos Dust, 37 Fed. Reg. 11321 (June 7, 1972) (adding 29 C.F.R. former pt. 1910.93a) ("Laundering of asbestos contaminated clothing shall be done so as to prevent the release of airborne asbestos fibers in excess of the exposure limits prescribed . . . . Any employer who gives asbestos contaminated clothing to another person for laundering shall inform such person of the requirement in (a) of this subdivision to effectively prevent the release of airborne asbestos fibers in excess of the exposure limits prescribed . . . .").

[130] *Id.* (requiring employers to provide employees with special clothing, changing rooms, and lockers to separate their street clothes from their work clothing).

to warn the employee by relying on a warning it conveyed to the employer and the employer's independent duty to warn the employee.[131] This defense provides:

> [Where] an employer has a duty to warn his employees of the dangers of the product . . . the manufacturer is absolved of any concurrent duty to warn those same employees. Phrased another way, if the employer/purchaser has "equal knowledge" of the product's dangers, then the manufacturer may be able to rely on the employer/purchaser to protect its own employees from harm.[132]

Delaware's sophisticated purchaser defense thus addresses the Manufacturers' legitimate concerns about the feasibility of their duty to warn in take-home asbestos exposure cases.[133]

By adhering to our recognition of this defense in take-home asbestos exposure cases, manufacturers face no impractical burden to put out area-wide warnings in communities where they have sold products, to get employee lists for household

---

[131] *See generally Mergenthaler*, 542 A.2d at 1212; *In re Asbestos Litig.*, 832 A.2d 705, 710 n.10 (Del. 2003) (accepting as Delaware law the sophisticated purchaser defense recognized in *Mergenthaler*); *In re Asbestos Litig. (Colgain)*, 799 A.2d at 1152 n.2 (same); *see also* Victor E. Schwartz & Russell W. Driver, *Warnings in the Workplace: The Need for a Synthesis of Law and Communication Theory*, 52 CINN. L. REV. 38 (1983) (explaining that employers are better positioned than manufacturers of industrial products to convey warnings to employees because the manufacturer may be unable to identify the ultimate employee-user; the employer controls the workplace and has authority over its employees; and the employer is expected to convey warnings and can do so directly).

[132] *Willis v. Raymark Indus., Inc.*, 905 F.2d 793, 796 (4th Cir. 1990) (citing *Mergenthaler*, 542 A.2d 1205).

[133] *See, e.g.*, Hollingsworth and Vose Answering Br. at 28–29 & n.112 (noting that "several other jurisdictions have declined to impose a duty on manufacturers in take-home asbestos cases on the basis that it would be poor public policy to impose what essentially amounts to a limitless duty to warn, especially given the lack of evidence that such warnings would be effective").

launderers, or to target local dry cleaners or commercial launderers. We agree with the Manufacturers that imposing such a broad duty to warn would be impractical, inefficient, and unfair. As a practical matter, a manufacturer "has neither the means of controlling the [purchaser's] subsequent actions nor the opportunity to provide warnings directly to the ultimate user . . . ."[134] This is especially the case where the manufacturer's asbestos product is an input to the employer's process and "is not in the original can, box, or form," but "it is reasonable to expect that the intermediate buyer has a safety program and that it will communicate whatever is necessary to the ultimate users."[135] By contrast, an employer is in a better position to convey a warning to its employee because:

> The employer generally understands and is best able to explain to its employees the risks associated with use of the product in the workplace. Second, the employer has an independent common-law and statutory duty to protect its employees from workplace hazards. Third, the employer occupies a position of authority in the workplace. The employee relies on the employer for training, direction and supervision in the workplace. Thus, the employer is the most credible source of workplace safety information. Fourth, the employer is a responsible party who can and should be expected to relay the manufacturer's product warnings to its employees. Finally, only the employer can communicate the often complex and technical product use and product safety information directly to its employees.[136]

---

[134] *Venus v. O'Hara*, 468 N.E.2d 405, 409 (Ill. App. Ct. 1984); *see generally* Schwartz, *supra* note 131, at 42 (noting that manufacturers' lack of contact with employees makes it difficult to determine which employees will use their products and those employees' informational needs).

[135] *Reed v. Pennwalt Corp.*, 591 P.2d 478, 481–82 (Wash. Ct. App. 1979) (finding that under those circumstances, "[t]he supplier has fulfilled its duty when it gives adequate warning to the intermediate buyer or supervisory personnel").

[136] Schwartz, *supra* note 131, at 81.

Because Delaware's sophisticated purchaser defense recognizes that the employer is in the best position to convey a warning to its employees, it accounts for "the practical difficulty, if not the virtual impossibility, of the suppliers actually being able to communicate adequate warnings directly to the customer's employees, much less of their being able to institute or assure the institution of effective safety precautions in their customer's plant,"[137] by providing a safe harbor from liability for an asbestos product manufacturer that conveys a warning to the employer, who is better positioned pass that warning on to the employee, and can be reasonably expected to do so because of its legal duty to the employee.

Allowing a manufacturer to discharge its duty to warn by conveying a warning to the employer "encourag[es] conduct that can feasibly be performed"[138] and "does not place an unreasonable burden on the manufacturer . . . [because] in most cases, its duty can be fulfilled by discovering the danger and giving warning thereof to the next party in the chain of distribution."[139] The end result for the manufacturer is a true safe harbor, within which it "is not subject to liability, even though the information never reaches those for whose use the chattel is supplied."[140]

---

[137] *Kennedy v. Mobay Corp.*, 579 A.2d 1191, 1196 (Md. Ct. Spec. App. 1990).
[138] *Webb v. Special Elec. Co.*, 370 P.3d 1022, 1027 (Cal. 2016).
[139] *Venus*, 468 N.E.2d at 409.
[140] RESTATEMENT § 388 cmt. l.

Precisely because the Manufacturers have raised a legitimate point about their distance from employees who work with their asbestos products under the control of the employer, we view it important that our common law provide an even safer harbor than the Restatement arguably offers.[141] The Restatement may be read to require a manufacturer to show in every case that it was reasonable to convey the requisite warnings only to its direct customer, the employer, rather than go beyond the employer to a broader class, quintessentially the employees of its customer.[142]

Because employers are in a comparatively better position to warn employees than asbestos product manufacturers with no direct relationship with the employees, an asbestos product manufacturer should generally be immune from liability if it provided sufficient warnings to the employer about the dangers of its asbestos

---

[141] *Id.* § 388 cmt. n (outlining a balancing test, under which "the magnitude of the risk involved must be compared with the burden which would be imposed by requiring" certain "precautions which must be taken to satisfy the requirements of reasonable care") (internal citations omitted)).

[142] *Mergenthaler*, 542 A.2d at 1210–11 (reviewing the jurisdictional split between recognition of a version of the sophisticated purchaser defense that allows a supplier to, as a matter of law, rely on the employer to warn its employees, and a version that requires an evaluation of the reasonableness of the supplier's belief that the employer will warn its employees using the balancing test of comment n of § 388, and adopting the former approach); *see generally* Richard C. Ausness, *Learned Intermediaries and Sophisticated Users: Encouraging the Use of Intermediaries to Transmit Product Safety Information*, 46 SYRACUSE L. REV. 1185, 1203 (1996) ("Under the 'duty' approach, the duty to warn shifts to each succeeding purchaser of the product. Thus, a manufacturer who provides adequate safety information to its immediate vendee thereby satisfies its duty to warn and is not responsible if that information fails to reach end users of the product. The second approach relies on the balancing test employed by section 388, comment n, of the Restatement. Under this approach, a manufacturer who provides safety information to its immediate vendee is relieved of liability only if its conduct is deemed to be reasonable in light of the factors enumerated in comment n.").

product,[143] and specifically as to this case, safe laundering instructions so that the employer could discharge its duty to provide a safe workplace to its employees and protect them from harm.[144] To the extent an asbestos product manufacturer has done so, it should not face liability from a plaintiff like Mrs. Ramsey, or an employee, unless the plaintiff can prove that the asbestos product manufacturer knew that the employer could not be reasonably trusted to pass on the relevant information to its employees.[145] That is, an asbestos product manufacturer should not bear the burden of proving it could rely on the employer to do that what is to be expected of it; rather, if a plaintiff wishes to fault an asbestos product manufacturer for failing to go beyond warning the employer, the plaintiff should show that the asbestos product

---

[143] *See* Mary-Christine Sungaila & Kevin C. Mayer, *Limiting Manufacturers' Duty to Warn: The Sophisticated User and Purchaser Doctrines*, 76 DEF. COUNSEL J. 196, 200 (2009) ("The relevant inquiry under this formulation of the defense is simple: If the purchaser-employer had knowledge or notice of the product's hazards, through either the supplier's warnings or independently-obtained information, the supplier has no duty to warn the purchaser's employees or customers and judgment will be entered as a matter of law in the supplier's favor.").

[144] *Mergenthaler*, 542 A.2d at 1213 (finding "as a matter of law that it was reasonable for [the supplier] to believe that [the employer] knew of the dangers of asbestos" based on the employer's "involvement with asbestos, the knowledge of the asbestos industry at the time," and the supplier's "unrefuted assertion" that the employer represented that it "was following all OSHA regulations").

[145] *Id.* (finding that the supplier may have been on notice that the employer was not giving its employees sufficient warnings because the employer gave the supplier a warning label to add to the asbestos products, and a question of fact existed as to whether that label was inadequate, giving rise to notice to the supplier).

manufacturer knew that it could not reasonably rely on the employer to act responsibly.[146]

For these reasons, we find that Mrs. Ramsey has a viable claim against the Manufacturers under the settled principles of § 388 if they failed to give warnings and safe laundering instructions to the Employer. If they failed to do so, and therefore the Employer also failed to do so, the Manufacturers should be accountable to Mrs. Ramsey for any harm she proved she suffered by exposure to their products.

## C.

In our view, the only remaining concern with this logic is that absent further alteration to our jurisprudence, manufacturers would face liability in circumstances when employers would not. And we agree with the Manufacturers that this is a

---

[146] Even under the balancing test of comment n to § 388, a court or "fact-finder" may still conclude that the manufacturer could, as a matter of law, rely on the employer to convey the warning to its employees. *E.g.*, *Smith v. Walter C. Best, Inc.*, 927 F.2d 736, 741 (3d Cir. 1990) (applying Ohio law and affirming a grant of summary judgment in favor of a supplier based on record evidence showing it was reasonable for the supplier to assume the employer "knew of the dangers of silica given the state of common medical knowledge at all relevant times, the various statutes and regulations governing silica, and the fact that [the employer] was a member of the Industrial Health Foundation, a non-profit organization providing information to its members relative to occupational diseases (including silicosis) and their prevention," and "the duty owed by [the employer] to provide its workers with a safe working environment and the virtual impossibility of [the supplier] reaching the ultimate users . . . ."); *Adams v. Union Carbide Corp.*, 737 F.2d 1453, 1456–57 (6th Cir. 1984) (concluding that "[t]he fact that [the employer] repeatedly updated its information about [chemical toluene diisocyanate ("TDI")] from [the supplier], coupled with the fact that [the employer] itself had a duty to its employees to provide them with a safe place to work, supports the inescapable conclusion that it was reasonable for [the supplier] to rely upon [the employer] to convey the information about the hazardous propensities of TDI to its employees within the context of comment n of the restatement").

problem because in take-home asbestos exposure cases like this, employers are often more directly responsible for causing the exposure to the employee that leads to injury to the household member who does the laundry. Not only that, as we have said,[147] we agree with the Manufacturers that it is the employer community that is best situated to directly warn the employees and provide them with safe laundering instructions. Even further, the employers are positioned to determine whether asbestos-covered clothes should even be laundered at home, or should instead be taken off at work and laundered by the employer itself under carefully controlled conditions designed to ensure the safety of those doing the laundering.

These important points are in fact already taken into account by our law's recognition of the sophisticated purchaser defense, which is premised on the employer's obligation to protect its employees from an unreasonable risk of harm, a duty that, in this context, includes the duty to provide warnings and safe laundering instructions. If an employer has no duty to give these warnings, then the sophisticated purchaser defense is not on a firm foundation.

Contrary to the Manufacturers' wish, we do not believe that the answer to this arguable imbalance in duty is to work a fundamental change in the principles of law applicable to asbestos product manufacturers. Instead, the answer is to revisit *Riedel*

---

[147] *See supra* Part III.

and *Price*, and their characterization of the employer's conduct in take-home asbestos exposure cases as nonfeasance.

## D.

Classically, a case of nonfeasance involves a situation when a bystander comes across someone suffering harm from causes not of the bystander's making. The bystander is in a position to stop or ameliorate the harm but does not do so. In that situation, the law recognizes that the bystander owed the victim a duty of care only if the bystander has a special relationship with the victim that imposes upon the bystander a corresponding duty to act.[148] "The result of the rule has been a series of older decisions to the effect that one human being, seeing a fellow man in dire peril, is under no legal obligation to aid him, but may sit on the dock, smoke his cigar, and watch the other drown."[149] To illustrate:

---

[148] RESTATEMENT § 314 ("The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."); *id.* § 314 cmt. a ("Special relations may exist between the actor and the other . . . which impose upon the actor the duty to take affirmative precautions for the aid or protection of the other."); *id.* § 314A cmt. b ("[T]he fact that the actor realizes or should realize that his action is necessary for the aid or protection of another does not in itself impose upon him any duty to act. The duties stated in this Section arise out of special relations between the parties, which create a special responsibility, and take the case out of the general rule.").

[149] *Id.* § 314 cmt. c ("In the early law one who injured another by a positive affirmative act was held liable without any great regard even for his fault. But the courts were far too much occupied with the more flagrant forms of misbehavior to be greatly concerned with one who merely did nothing, even though another might suffer serious harm because of his omission to act. Hence liability for non-feasance was slow to receive any recognition in the law. It appeared first in, and is still largely confined to, situations in which there was some special relation between the parties, on the basis of which the defendant was found to have a duty to take action for the aid or protection

If A saw that B was about to be struck on the head by a flowerpot thrown from a tenth-story window, and A knew that B was unaware of the impending catastrophe and also knew that he could save B with a shout, yet he did nothing and as a result B was killed, still, A's inaction, though gratuitous (there was no risk or other nontrivial cost to A) and even reprehensible, would not be actionable.[150]

By contrast, in the case of misfeasance, "the defendant, by interfering with plaintiff or his affairs, has brought a new harm upon him, and created a minus quantity, a positive loss."[151] That is, "by 'misfeasance' the defendant has created a new risk of harm to the plaintiff, while by 'nonfeasance' he has at least made his situation no worse, and has merely failed to benefit him by interfering in his affairs."[152]

In take-home asbestos exposure cases, an employer engages in misfeasance when it causes an employee to work with asbestos products under conditions in which asbestos dust covers the clothes he wears at the workplace and has laundered

---

of the plaintiff."); *id.* § 314 cmt. c, illus. 1 ("A sees B, a blind man, about to step into the street in front of an approaching automobile. A could prevent B from so doing by a word or touch without delaying his own progress. A does not do so, and B is run over and hurt. A is under no duty to prevent B from stepping into the street, and is not liable to B.").

[150] *Stockberger v. U.S.*, 335 F.3d 479, 480 (7th Cir. 2003); *see also Estates of Morgan v. Fairfield Family Counseling Ctr.*, 673 N.E.2d 1311, 1319 n.2 (Ohio 1997) ("[T]he expert swimmer, with a boat and rope at his disposal, who sees another drowning before his eyes, is under no obligation to help him. Instead he may sit on the dock and watch the man drown. Similarly, an ordinary bystander is under no duty to rescue a child drowning in what he knows to be shallow water, or to prevent a neighbor's child from hammering on a dangerous explosive.").

[151] Bohlen, *supra* note 7, at 220.

[152] Keeton et al., *Prosser and Keeton on the Law of Torts*, § 56, at 373).

at home.  Even in *Riedel*, we acknowledged that as to the employee, the employer had engaged in misfeasance by engaging in this active course of conduct.[153]  But we fail to see how that logic does not extend further, because it is the employer's active conduct of causing the employee's clothes to become covered with asbestos dust that resulted in the employee's spouse's exposure.  This is not a case where the employer "merely did nothing."[154]  The employer's affirmative actions caused the exposure.  That the exposure to both the employee and his spouse might have been limited by providing warnings and safe laundering instructions does not turn the employer's action into nonfeasance.  The nonfeasance in this situation—the failure to warn—is culpable precisely because a duty to warn arose when the employer engaged in the misfeasance of exposing its employee to dangerous asbestos products.[155]

---

[153] *Riedel*, 968 A.2d 17, 24 (Del. 2009) ("We conclude that, although Mrs. Riedel may have presented a theory of misfeasance in characterizing Mr. Riedel's claim, she presented a nonfeasance theory in characterizing her own.").

[154] *Id.* at 23.

[155] *Price*, 26 A.3d at 171 (Berger, J., dissenting) (noting that the employer's "conduct is properly analyzed as misfeasance" because the employer "created a new risk of harm" by its affirmative act, which "was the release of asbestos in the workplace") (internal citations omitted); *Satterfield*, 266 S.W.3d at 364 (finding that an employer's "injurious affirmative act of operating its facility in such an unsafe manner that dangerous asbestos fibers were transmitted outside the facility to others who came in regular and extended close contact with the asbestos-contaminated work clothes of its employees" was misfeasance); *Rochon*, 2007 WL 2325214, at *3 (finding that the employer's affirmative act of "operating its own factory in an unsafe manner" "caused [the plaintiff-spouse]'s illness, not either a failure to act or the act of a third party").

Once an employer has engaged in misfeasance, recognized principles of tort law impose upon it a duty to "act reasonably, as a reasonably prudent man (or entity) would," which "encompasses protecting against reasonably foreseeable events."[156]

*　　*　　*

In resolving this case as we have, we believe we have addressed the legitimate fears of the Manufacturers that they will be unfairly exposed to liability in take-home asbestos exposure cases. By circumscribing their duties, and those of employers, there can be no fear of liability for not providing widespread notice or specific notice to persons who the defendants do not even know. Furthermore, it is likely not coincidental that in our own take-home asbestos exposure cases and those in other states, the plaintiffs have not been people with episodic contact with an employee,[157] they have been people like Mrs. Ramsey, who laundered their family members' clothes repeatedly for many years.[158] The reality is that although industrial jobs like

---

[156] *Delmarva Power & Light Co.*, 435 A.2d at 718.

[157] *See Schwartz v. Accuratus Corp.*, 139 A.3d 84, 89 (N.J. 2016) ("We note that no precedent from another jurisdiction, in a non-strict liability setting, has found a duty in a take-home toxic-tort cause of action outside of a factual setting involving household members, presumably because of the idiosyncratic nature of most other interactions with a take-home toxin."); *Satterfield*, 266 S.W.3d at 374 ("[A] duty to warn all foreseeable persons who might be exposed to asbestos fibers on an employee's work clothes would be too great a burden. However, the imposition of a duty of reasonable care with regard to safe handling of asbestos fibers on employees' work clothes to prevent transmission to others is not such a burden.").

[158] Other courts who conjured up the specter of limitless liability associated with take-home asbestos claims brought by persons other than an employee's spouse all did so in the context of cases brought by plaintiffs from the same household as the employee. In the following cases, all

55

Mr. Ramsey's have been valuable in creating the basis for many Americans to live fulfilling and comfortable middle-class lives, they rarely, if ever, involve pay that would affordably allow for weekly dry cleaning of work clothes. For that reason alone, it seems likely that most plaintiffs in cases like this will be of the most foreseeable kind: those who for many years laundered the dirty clothes of the employee with whom they shared a household. And, of course, these plaintiffs must also prove out all the other elements of their claims in order to recover.[159]

If, as the Manufacturers suggest, claims from plaintiffs with more momentary exposure to and tenuous relationship to an exposed employee are filed in the future, the answer is to address those cases then in a reasoned way that takes into account

---

the examples in the parentheticals involve imagined classes of plaintiffs, none of whom were before the courts doing the imagining. *See, e.g.*, *In re New York City Asbestos Litig.*, 5 N.Y.3d 486, 498 (N.Y. 2005) ("a babysitter who takes care of children in the employee's home five days a week"); *id.* ("the babysitter (or maybe an employee of a neighborhood laundry) [who] launders the family members' clothes,"); *In re Certified Question from the Fourteenth District Court of Appeals of Texas*, 740 N.W. 2d 206, 219 (Mich. 2007) ("extended family members, renters, house guests, carpool members, bus drivers, and workers at commercial enterprises visited by the worker when he or she was wearing dirty work clothes" (quoting Behrens & Cruz–Alvarez, *A Potential New Frontier in Asbestos Litigation: Premises Owner Liability for "Take Home" Exposure Claims*, 21 Mealey's Litig Rep. Abs. 1, 4 (2006))); *Adams v. Owens-Illinois, Inc.*, 705 A.2d 58, 66 (Md. Ct. Spec. App. 1998) ("other family members, automobile passengers, and co-workers"); *Gillen v. Boeing Co.*, 40 F. Supp. 3d 534, 540 (E.D. Pa. 2014) ("children, babysitters, neighbors, dry cleaners"); *Olivo v. Exxon Mobil Corp.*, 872 A.2d 814, 820 (N.J. Super. Ct. App. Div. 2005) ("car pool participants, bus drivers, elevator operators"); *Quiroz v. Alcoa*, — P.3d —, 2018 WL 2170175, at *16 (Ariz. 2018) ("neighbors and friends, babysitters and cab drivers, waiters and bartenders, dentists and physicians, and fellow church members"); *Van Fossen v. MidAmerican Energy Co.*, 777 N.W.2d 689, 699 (Iowa 2009) ("a large universe of other potential plaintiffs who never visited the employers' premises but came into contact with . . . asbestos-tainted clothing in a taxicab, a grocery store, a dry-cleaning establishment, a convenience store, or a laundromat").

[159] This challenge may be difficult in take-home cases, particularly if they are based on episodic exposure. *See generally* Behrens, *supra* note 1, at 556 (noting that courts are more closely scrutinizing causation evidence presented by plaintiffs with "*de minimis* or remote exposures").

the practicalities that must inform our common law. But, the answer is not to ignore the equity due to the plaintiff before us, and the plaintiffs like her, who base their claims on a clearly foreseeable consequence of common, and necessary, human conduct: workers often have family members who launder their work clothes, and if those work clothes are covered in asbestos dust, those family members can suffer serious injury and even death.

## V.

For these reasons, we reverse the Superior Court's grants of summary judgment for the Manufacturers and remand for further proceedings to resolve the remaining issues dividing the parties.