**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| ELECTRIC LAST MILE | ) | |
| SOLUTIONS, INC. STOCKHOLDER | ) | CONSOLIDATED |
| LITIGATION | ) | C.A. No. 2022-0630-KSJM |

**ORDER RESOLVING MOTION TO DISMISS[1]**

1.      This action arises from alleged breaches of fiduciary duty that occurred in connection with a stockholder vote to approve a "de-SPAC" merger that took place in June 2021. The plaintiffs are stockholders of Forum III Merger Corporation ("Forum III"), a special purpose acquisition company ("SPAC"), that merged with Electric Last Mile ("ELM"), Inc, a private company. That transaction resulted in the formation of Electric Last Mile Solutions, Inc. ("ELMS"), which was a publicly traded electric vehicle manufacturer until 2022. The plaintiffs asserted claims for breach of fiduciary duty against the SPAC sponsor and the directors of Forum III: Marshall Kiev, Richard Katzman, Steven Burns, and Jeffrey Nachbor. The plaintiffs allege that the Forum III defendants failed to fulfill their duty of disclosure to stockholders before the approval vote. They also claim that ELM co-founders, Jason Luo and James Taylor, aided and abetted in the other defendants' fiduciary breaches. Luo and Taylor—but not the other defendants—moved to dismiss the complaint. Their motion is denied.

---

[1] The facts are drawn from the Verified Complaint and the documents incorporated by reference. C.A. No. 2022-0630-KSJM, Docket ("Dkt.") 63, Verified Consolidated Stockholder Class Action Complaint ("Compl.").

2. Forum III was formed on June 25, 2019. It went public on August 21, 2020 and had two years to complete a merger with a target company. The day it went public, Forum III started discussions with Luo about a merger with ELM. At the time, ELM had neither revenue nor operations, but it had plans to disrupt the electric vehicle and delivery market in the United States. Discussions and negotiations between Forum III and the ELM continued through the Autumn of 2020. The parties entered into a merger agreement on December 10, 2020 (the "Merger Agreement").

3. After announcing the deal, Luo and Taylor worked with Forum III directors and management to hype the transaction to the market through investor presentations, press releases, conference calls, and interviews. These presentations were bullish about ELM's future performance, with Luo and Taylor discussing projections that predicted ELM would soon be a $3 billion company. ELM also engaged in and sponsored press releases, investor calls, and online posts that supported the merger and boasted about ELM's capabilities.

4. Forum III issued a proxy statement in connection with the merger (the "Proxy") on June 9, 2021. Three aspects of the Proxy are relevant to Luo and Taylor's motion. First, the Proxy described ELM as having "in-house engineering expertise," "manufacturing processes," "in-house manufacturing" at the Mishawaka, Indiana facility, and the ability to "assembl[e]" its "own, unique electric vehicles."[2] But the Proxy did not disclose agreements between ELM and Liuszhou Wuling Automobile Industry, Co., Ltd. ("Wuling"), a Chinese company, that gave Wuling "end-to-end

[2] Compl. at ¶ 99.

2

responsibility for the overall design, engineering and production" of ELM's vehicles.[3] Second, the Proxy integrated ambitious projections prepared by ELM. Finally, the Proxy did not disclose in detail that Lou and Taylor had purchased equity in ELM at a discount before the merger.

5. On June 24, 2021, stockholders representing 66.86% of Forum III's issued and outstanding shares approved the merger. The redemption date for stockholders was June 22, 2021.

6. Stockholders were left disappointed. After the merger closed, ELMS slashed its estimated production for the first and third quarters of 2021. A special committee investigation also revealed that in November and December 2020, shortly before the merger closed, Luo and Taylor purchased equity in ELM at substantial discounts. Because of this, the ELMS Board removed Luo and Taylor from their positions for cause. Luo and Taylor then resigned on February 1, 2022.

7. Things got worse. On February 8, 2022, BDO LLP ("BDO") resigned as ELMS's auditor, citing the company's failure to take timely and appropriate remedial action with respect to "illegal" acts.[4] On March 14, 2022, ELMS disclosed that the Securities and Exchange Commission had opened an investigation into Luo and Taylor's equity transactions and BDO's resignation.

---

[3] *Id*. at ¶ 101.

[4] *Id*. at ¶ 26.

8. ELMS filed for Chapter 7 Bankruptcy on June 14, 2022. At the time, it was earning no income from its business operations and could not fund its operations and or pay its debts. On July 29, 2022, ELMS's stock was delisted from NASDAQ.

9. The plaintiffs filed this action on November 30, 2022.[5] Luo and Taylor moved to dismiss the claim against them for aiding and abetting on February 13, 2023.[6] The parties completed briefing on the motions on May 11, 2023, and the court held oral argument on October 30, 2023.[7]

10. "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'"[8] When considering a motion to dismiss under Rule 12(b)(6), the court must "accept all well-pleaded factual allegations in the [c]omplaint as true . . . draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[9] The court, however, need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[10]

---

[5] Dkt. 63.

[6] Dkt. 68; Dkt. 70.

[7] Dkt. 83; Dkt. 100, Dkt. 101.

[8] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011).

[9] *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[10] *Price v. E.I. DuPont de Nemours & Co., Inc.*, 26 A.3d 162, 166 (Del. 2011) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255 (Del. 2018).

4

11. To state a claim for aiding and abetting, a plaintiff must allege: (i) the existence of a fiduciary relationship; (ii) a breach of the fiduciary's duty; and (iii) knowing participation in the breach made by the non-fiduciary.[11] The movants do not dispute that the plaintiffs adequately allege the first two elements. Instead, they argue that the plaintiffs have not adequately alleged knowing participation.

12. The element of knowing participation involves two concepts: knowledge and participation.[12] The plaintiffs allege that Luo and Taylor knowingly participated in the Forum III defendants' disclosure-related breach of fiduciary duty by causing information they knew to be materially misleading to appear in the Proxy.

13. Specifically, the plaintiffs identify three categories of misleading or omitted information. The first is the extraordinary projections Luo and Taylor gave to Forum III and shared with stockholders in the "hyping" period. The second centers on the non-disclosure or incomplete disclosure of the Chinese supplier (Wuling) agreements. The third concerns Luo and Taylor's "discount" holdings in ELM prior to the merger. The first two categories are material to stockholders because they directly relate to ELM's suitability as a target company. The third category relates to material conflicts of interests that should have been disclosed to stockholders.

---

[11] *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 72 (Del. 1995); *see also RBC Capital Markets, LLC v. Jervis*, 129 A.3d 816 at 861–62 (Del. 2015).

[12] *RBC*, 129 A.3d at 862.

14. Under Rule 9(b), a plaintiff can plead knowledge generally.[13] Accordingly, "[f]or purposes of a motion to dismiss under Rule 12(b)(6), a complaint need only plead facts supporting a reasonable inference of knowledge."[14] The plaintiffs have adequately alleged that Luo and Taylor knew the information in the Proxy under these three categories was false or misleading.

15. Working through the three issues in reverse order, it is more than reasonably conceivable that Luo and Taylor knew the facts relevant to their personal acquisitions.

16. It is also reasonably conceivable that Luo and Taylor knew the information concerning ELM's domestic manufacturing capabilities and Chinese supplier agreements. Luo and Taylor signed off on the supplier agreements and also ran the company. From this personal knowledge, Luo and Taylor knew the information on the undisclosed Wuling agreements and ELM's production capabilities was not accurate in the Proxy.

17. The allegations concerning the projections are trickier, but the plaintiffs still adequately allege that Luo and Taylor knew the projections they provided were misleading.

---

[13] *Firefighters' Pension Sys. of City of Kansas City, Missouri Tr. v. Presidio, Inc.*, 251 A.3d 212, 275–76 (Del. Ch. 2021) (quoting *Dent v. Ramtron Int'l Corp.*, 2014 WL 2931180, at *17 (Del. Ch. Mar. 25, 2014).

[14] *Presidio*, 251 A.3d at 275; *Wells Fargo & Co. v. First Interstate Bancorp.*, 1996 WL 32169, at *11 (Del. Ch. Jan. 18, 1996) ("[O]n the question of pleading knowledge, however, Rules 12(b)(6) and Rule 9(b) are very sympathetic to plaintiffs.").

18.    In *P3 Health Group Holdings*, the court held that a projection that "represented a dramatic reversal from a positive projection to a large loss" raised an inference of scienter for knowing that the projections were false or misleading.[15] Although projections may not "pan out," the "timing, magnitude, and surrounding circumstances" can raise an inference of scienter.[16]  In that case, the company in question was a closely held LLC with only $14.49 million in assets and few employees. Given the size of the company, the court held that the directors and management would have had a "sufficient handle on its operations" to make a reasonable and accurate projection of the Company's performance.[17]  But the company "missed by miles."[18]  The complaint portrays ELM and its projections similarly to the company in *P3*.

19.    Although the fact that a business has missed a near-term projection by a large margin supports several possible inferences—including some that are innocent—one possible inference is that directors knew the projections were false when they made them.  Given that Luo and Taylor were managers and directors of ELM, the court can infer they would know the true financial picture of ELM. This inference is further supported by Luo and Taylor's grandstanding to stockholders over ELM's future performance and their prior discussions with

---

[15] *In re P3 Health Gp. Hldgs., LLC*, 2022 WL 15035833, at *5 (Del. Ch. Oct. 26, 2022).
[16] *Id.*
[17] *Id.*
[18] *Id.*

Forum III. Taylor and Luo knew the facts and figures when they were disclosing them to stockholders and Forum III.

20. At oral argument, Taylor argued that the projections always had the potential to be off the mark because ELM was such a new company, and so Luo and Taylor would have no basis on which to make realistic projections. This is one inference that could be drawn from the allegations. But it is a defendant-friendly inference, and the court must draw a plaintiff-friendly one. The court infers that because the projections failed so drastically and so quickly, their lack of veracity must have been known to Luo and Taylor—the most senior members of ELM.

21. Having satisfied knowledge, the plaintiffs must also allege participation. The plaintiffs argue that it is inferable Luo and Taylor participated in the breach by "misleading the [Board] with false or materially misleading information" and/or "withholding information in a manner that misleads the fiduciary on a material point" that created an "informational vacuum."[19] The court agrees. The alleged facts raise a reasonable inference that Luo and Taylor either

---

[19] *In re Columbia Pipeline Grp., Inc.*, 2021 WL 772562, at *54–55 (Del. Ch. Mar. 1, 2021); *see also FrontFour Cap. Gp. LLC v. Taube*, 2019 WL 1313408, at *26 (Del. Ch. Mar. 11, 2019) ("In the events leading up to the Proposed Transactions, the Taube brothers created an informational vacuum, which they then exploited."); *Mesirov v. Enbridge Energy Co.*, 2018 WL 4182204, at *13–16 (Del. Ch. Aug. 29, 2018) (sustaining claim for aiding and abetting against a financial advisor for preparing misleading analyses and creating an informational vacuum" that misled the board); *In re Wayport, Inc. Litig.*, 76 A.3d 296, 322 n.3 (Del. Ch. 2013) (holding that "a non-fiduciary aider and abetter" could be exposed to liability "if, for example, the non-fiduciary misled unwitting directors to achieve a desired result.").

8

misled the board for their own benefit or colluded with the board for the benefit of all the defendants.

22.    First, Taylor and Luo (and the Forum III directors) each harbored a strong motivation to see the transaction close given their disparate interest compared to stockholders, who would not see a loss if the merger was shot down.[20]    This supports an inference that Taylor and Luo would obfuscate ELM's true financial state from stockholders to push through approval.

23.    Second, ELM was contractually obligated to review the Proxy.    The Merger Agreement stated that:

> [ELM] shall ensure that none of the information supplied by or on its behalf for inclusion or incorporation by reference in the Proxy Statement will . . . contain any untrue statement of a material fact or omit to state any material fact . . . . If . . . [ELM] discovers any information . . . relating to [ELM], its . . . officers, directors or employees that should be set forth in an amendment or a supplement to the Proxy Statement so that the Proxy Statement would not include any misstatement of a material fact or omit to state any material fact . . . then [ELM] shall promptly

---

[20] As to approval of the Merger Agreement, Luo and Taylor have a unity of interest with the Forum III defendants.  The Forum III defendants' founder shares give rise to conflicts.  *See In re MultiPlan Corp. S'holders Litig.,* 268 A.3d 784, 811 (Del. Ch. 2022); *Delman v. GigAcquisitions3, LLC*, 288 A.3d 692, 718 (Del. Ch. 2023).  Luo and Taylor's discounted holdings in ELM created similar.  Stockholders, on the other hand, are "decoupled" by virtue of having the chance to redeem their initial investment (plus interest). *See* Henry T.C. Hu & Lawrence A. Hamermesh, *Decoupling and Motivation: Re-Calibrating Standards of Fiduciary Review, Rethinking "Disinterested" Shareholder Decisions, and Deconstructing "De-SPACs"*, 78 Bus. Law. 999, 1039–45 (2023) (deconstructing competing interests at play in Delaware SPAC cases).

inform Parent of such information . . . shall promptly provide all information required. . . .[21]

24. The movants argue that the contractual obligation evident in the Merger Agreement is not dispositive on whether Luo and Taylor reviewed the Proxy. This is true because the agreement did not *personally* obligate Luo and Taylor to review the Proxy.[22] But it does not preclude a finding of participation either.

25. The Merger Agreement required ELM to review the Proxy, and Luo and Taylor represented ELM in its dealings with Forum III. Luo and Taylor were executives at the company and were involved in other high-level parts of the transaction, including negotiating the letter of intent and Merger Agreement. Such involvement alongside the company's contractual obligation raises an inference that Luo and Taylor reviewed the Proxy.

26. Finally, the plaintiffs' best demonstration of participation comes from the facts alleged that show Luo and Taylor's active participation in the transaction. In *Great Hill Equity Partners IV, LP*, the court inferred knowing participation where

---

[21] The court takes judicial notice of this language from the Merger Agreement, which was referenced multiple times in the complaint. *See In re TIBCO Software Inc. S'holders Litig.*, 2015 WL 6155894, at *7 n.8 (Del. Ch. Oct. 20, 2015) ("I take judicial notice of the contents of the Merger Agreement, which is a defined term in the Complaint and referenced throughout the Complaint."); *Meso Scale Diagnostics, LLC v. Roche Diagnostics GmbH*, 2011 WL 1348438, at *7–8 (Del. Ch. Apr. 8, 2011) (considering merger agreement as integral to and incorporated in complaint).

[22] As compared to the situations in *Columbia* and *Mindbody*. In *re Columbia Pipeline Gp., Inc.,* 2021 WL 772562, at *58–59 (Del. Ch. Mar. 1, 2021) (holding plaintiffs successfully raised inference of participation where agreement required company to correct proxy); *In re Mindbody, Inc., S'holder Litig.*, 2021 WL 5564687, at *2 (Del. Ch. Nov. 29, 2021) (same).

10

directors were closely involved in a sales process.[23] That deep involvement raised "an inference that [the directors] were aware of the catastrophic problems . . . and of [the company's] deeply misleading disclosures."[24] Here, the plaintiffs allege in detail how Luo and Taylor participated and assisted in executing and marketing the transaction to Forum III stockholders. Luo and Taylor were involved from start to finish. This is a sufficient allegation of "close involvement" and knowing participation in Forum III's allegedly misleading disclosures to stockholders.

27. Moreover, when a defendant is an affiliate involved in a transaction, the path to alleging participation is uncomplicated.[25] "By definition, [an] affiliate is already participating in the transaction, and principles of imputation permit the knowledge of a duty-breaching fiduciary to be attributed to [an] affiliate."[26] Like a financial advisor or other deal affiliate, Luo and Taylor were involved in the transaction, and the plaintiffs plead facts that Luo and Taylor participated in the execution and promotion of the merger.[27] Overall, given the facts alleging Luo and Taylor's tentacular involvement in the transaction, the plaintiffs have adequately

---

[23] *See Great Hill Equity P'rs IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980, at *21 (Del. Ch. Nov. 26, 2014).

[24] *Id.*

[25] *In re Columbia Pipeline Grp., Merger Litig.*, 299 A.3d 393, 471 (Del. Ch. 2023).

[26] *Id.*

[27] *See MultiPlan*, 268 A.3d at 818 (Del. Ch. 2022) (inferring at pleading stage that affiliate of interested controller who acted as financial advisor for transaction aided and abetted breach of duty by controller); *La. Mun. Police Empls.' Ret. Sys. v. Fertitta*, 2009 WL 2263406, at *7 n.27 (Del. Ch. July 28, 2009) (inferring at pleading stage that affiliated entities that controller used to effectuate an interested transaction knowingly participated in the breach).

pled participation, and, in turn, along with knowledge, a claim that Luo and Taylor aided and abetted the Forum III defendants' disclosure breach.

28.     For the foregoing reasons, Luo and Taylor's motions to dismiss are DENIED.

*/s/  Kathaleen St. Jude McCormick*
Chancellor
Dated: January 22, 2024
