# COURT OF CHANCERY
## OF THE
## STATE OF DELAWARE

PAUL R. WALLACE
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0660

Rudolf Koch, Esquire
Nicholas F. Mastria, Esquire
RICHARDS, LAYTON & FINGER P.A.
920 North King Street
Wilmington, Delaware 19801

Tammy L. Mercer, Esquire
Jillian A. Tyson, Esquire
YOUNG CONAWAY STARGATT & TAYLOR, LLP
1201 N. Market Street
Wilmington, Delaware 19801

Adam Slutsky, Esquire (*argued*)
GODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210

N. Thomas Connally, III, Esquire
Christopher T. Pickens, Esquire (*argued*)
Patrick T. Michael, Esquire
Samuel W. Yergin, Esquire
HOGAN LOVELLS US LLP
8350 Broad Street, 17th Floor
Tysons, Virginia 22102

Submitted: July 26, 2024
Decided: August 14, 2024

RE: *Sunstone Partners Management, LLC v. Synopsys, Inc.*
C.A. No. 2024-0261-PRW
Defendant's Motion to Dismiss

Dear Counsel:

Before the Court is the Rule 12(b)(6) Motion to Dismiss filed by Defendant

Synopsys, Inc ("Synopsys"). The pleading standard in Delaware may be minimal,

but it's not automatic. Plaintiff Sunstone Partners Management LLC ("Sunstone")

fails to allege sufficient facts that Synopsys violated a letter of intent's exclusivity

provision. So, Synopsys's motion must be **GRANTED**.

## I.  RELEVANT BACKGROUND

On October 19, 2023, Sunstone and Synopsys entered into the Letter of Intent ("LOI") for the potential sale of Synopsys's security testing services business ("STS") to Sunstone.[1]  Under the LOI, the "Exclusivity" Provision was binding[2] and provided that:

> [d]uring the Exclusivity Period (as defined below), Synopsys and its agents and representatives will not solicit, negotiate or accept any proposal for any merger with or acquisition of the Business, or the sale or exclusive license of all or substantially all of the Business's assets, from any person other than Sunstone Partners and its representatives and advisors.[3]

The "Exclusivity Period" ran from October 19 to November 18, 2023, and automatically extended to December 3, 2023, if Sunstone remained in "good faith negotiation with respect to the Transaction."[4]

Sunstone believes Synopsys admitted to breaching this provision during a Synopsys quarterly earnings call (the "Earnings Call").   On November 29, 2023, Synopsys's CEO stated, in relevant part, that:

> [f]ollowing our strategic portfolio review, and in consultation with the company's Board of Directors, we have decided to explore strategic

---

[1]   Verified Complaint ("Compl.") ¶ 13; *id.*, Ex. 1 ("LOI").

[2]   *See* LOI, Preamble.

[3]   *Id.* at 4-5; Compl. ¶¶ 13, 18.

[4]   *Id.*

alternatives for the Software Integrity business. As part of this process, we're considering full range of strategic opportunities. We will provide an update after we conclude that process.[5]

Synopsys's Soft Integrity business ("SIG") is one of three business segments at Synopsys.[6] STS, the business subject to discussions under the LOI, is a part of SIG. Sunstone believes that, based on the statements during the Earnings Call, Synopsys had "for weeks" been "soliciting buyer interest in its SIG business" and the "STS assets."[7]

After the Earnings Call, Synopsys's Senior Vice President of Corporate Development emailed Sunstone and mentioned that they had retained JP Morgan to assist in evaluating the "strategic options with respect to our SIG Business."[8] Sunstone and Synopsys continued to negotiate a deal through December.[9] On February 7, 2024, the press reported that Synopsys was near to selling its entire SIG business.[10]

Approximately one month later, Sunstone initiated this action by filing a

---

[5]   Compl. ¶ 21; *see also id.* ¶ 22.

[6]   *Id.* ¶ 11.

[7]   *Id.* ¶ 23.

[8]   *Id.* ¶ 25.

[9]   *Id.* ¶ 27.

[10]   *Id.* ¶ 28.

complaint for breach of contract against Synopsys with respect to the Exclusivity Provision. Sunstone seeks to recover for its costs incurred in conducting due diligence and negotiations.

Synopsys moved to dismiss the complaint under Court of Chancery Rule 12(b)(6) ("Motion to Dismiss").

## II. STANDARD OF REVIEW

Delaware's pleading standard is "minimal"[11] but the Court need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[12] The Court (1) accepts as true all well-pleaded factual allegations in the complaint; (2) credits vague allegations if they give the opposing party notice of the claim; (3) draws all reasonable factual inferences in favor of the non-movant; and (4) denies dismissal if recovery on the claim is reasonably conceivable.[13]

A complaint for breach of contract is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."[14] Such a

---

[11] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 536 (Del. 2011) citation omitted).

[12] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), overruled on other grounds by *Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255, 1277 (Del. 2018).

[13] *Cent. Mortg. Co.*, 27 A.3d at 535.

[14] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 611 (Del. 2003).

statement must only give the defendant fair notice of a claim and is to be liberally construed.[15] The plaintiff need only allege facts that, if true, state a claim upon which relief can be granted.[16]

## III. DISCUSSION

Sunstone alleges that Synopsys solicited buyer interest in STS in violation of the Exclusivity Provision. Synopsys seeks dismissal of the complaint because Sunstone has failed to allege any breach of the Exclusivity Provision, and separately, it cannot show damages for any alleged breach. In opposition to the motion, Sunstone contends that Synopsys's statements during and after the Earnings Call raise a reasonable inference of solicitation. Synopsys focuses on two factual allegations: Synopsys's announcement that it would "explore strategic alternatives" for the SIG business during the Earnings Call, and Synopsys's retention of JP Morgan to assist in that process.[17]

---

[15] *Id.*

[16] *Id.*

[17] Plaintiff Sunstone Partners Management, LLC's Answering Brief in Support of Its Opposition to Defendant Synopsys, Inc.'s Motion to Dismiss at 1 (D.I. 42). Sunstone also characterizes certain statements in an email from Synopsys to Sunstone regarding the impact of Synopsys' decision to potentially sell the SIG business. The statements by Synopsys in that email thread that Sunstone relies upon in its complaint do not show that Synopsys was admitting that it was soliciting any proposals for the sale of the STS business during the exclusivity period. For example, "the decision regarding the whole SIG business does have an impact on our deal" does not raise the reasonable inference of any prior solicitation of the STS assets, nor does the statement that Synopsys would only take a "minimum of effort on [its] part" going forward in negotiations with Sunstone. Compl.

The elements of a breach-of-contract claim are: a contractual obligation; a breach of that obligation by the defendant; and a resulting damage to the plaintiff.[18] At issue is the Exclusivity Provision, and whether Sunstone has adequately pled a breach of that provision and any damages.

The Exclusivity Provision is narrow. It provides that during the exclusivity period, "Synopsys . . . will not solicit, negotiate or accept any proposal" for the STS assets from anyone besides Sunstone.[19] Because "solicit" is an undefined term in the contract, the Court interprets it according to its plain and ordinary meaning.[20] Solicit means "to approach with a request or plea," or "request[] or seek[] to obtain something."[21] Too, the object of the solicitation must be a "proposal" for the sale of the STS assets, not expressions of general interest or preliminary discussions.[22] Had the parties wished to prohibit any communications that could invite or entice

---

¶ 26.

[18] *Cedarview Opportunities Master Fund, L.P. v. Spanish Broad. Sys., Inc.*, 2018 WL 4057012, at *6 (Del. Ch. Aug. 27, 2018) (citation omitted).

[19] LOI at 4-5.

[20] *See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rhone-Poulenc Basic Chemicals Co.*, 1992 WL 22690 at *12 (Del. Super. Ct. Jan. 16, 1992) ("In the absence of such a definition, the applicable rules of construction require that the term be given its plain, ordinary meaning.").

[21] *Solicit*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/solicit (last visited Aug. 13, 2024). (2024); *see also* Solicitation, BLACK'S LAW DICTIONARY 1677 (11th ed. 2019).

[22] LOI at 4-5.

proposals, it could have done so by crafting broader language.[23]   Instead, the Exclusivity Provision narrowly prohibits petitions for the sale of the STS assets.

Sunstone has not adequately alleged a breach of the Exclusivity Provision. The statements in the Earnings Call are not a solicitation seeking a proposal for the sale of the STS assets.  Stating that "we have decided to explore strategic alternatives for the Software Integrity business" is not a request for a proposal of a sale of the STS assets, even if the STS is a subdivision within the Software Integrity business.[24] Interpreting these comments in the most plaintiff-friendly light, the Court construes them as initiating a process that may or may not result in sale proposals.  That, under the narrow terms of the Exclusivity Provision, is not a solicitation.  There must exist a specific request for proposals of a sale of the STS assets.  Merely considering a sale is not soliciting, negotiating, or accepting a proposal.

Furthermore, Sunstone seeks to draw the inference that a company had been soliciting interest from prospective buyers because it publicly announced several weeks later that it was considering the sale of the business segment itself.  This inference is unreasonable and speculative.  Sunstone identifies no other factual

---

[23]   *See, e.g.*, *NACCO Industries, Inc. v. Applica Inc.*, 997 A.2d 1, 14 (Del. Ch. 2009) (defendant agreed not to "directly or indirectly solicit, initiate or encourage any inquiries or proposals from, discuss or negotiate with, or provide any non-public information to, any Person.").

[24]   Compl. ¶ 21.

allegations prior to the announcement such as the identity of any other prospective buyers, any other meetings, or any other communications. Sunstone's suspicions of solicitation rest solely on the Earnings Call and the retention of JP Morgan to assist in a potential sale process of SIG. Mere suspicion alone does not relieve Sunstone of its burden to allege a reasonably conceivable claim. Sunstone fails to allege facts that raise any reasonable inference of solicitation.

Too, several inferences weigh against any suggestion that Synopsys solicited an alternative proposal for the sale of the STS assets. It makes little sense for Synopsys to solicit interest from other buyers after the Earnings Call when it was less than three days away from the expiration of the Exclusivity Period. It is also not inconsistent to consider the sale of the STS assets to Sunstone and the remaining parts of the SIG business to another buyer. Announcing a sale process for a business's segment does not necessarily mean that all segments of that business will go through the same process—or have the same buyer. Indeed, Synopsys continued to engage in negotiations with Sunstone after the Earnings Call and through December.[25] While Delaware's pleading standard may be plaintiff-friendly, the Court need not accept conclusory allegations unsupported by *specific* facts nor draw

---

[25] *Id.* ¶ 27.

*unreasonable* inferences in a plaintiff's favor.[26]   Yet, fueled only with a healthy dose of mere conjecture that is precisely what Sunstone asks the Court to do here.  The Court can't and still uphold its minimal, but meaningful, pleading standard.

## IV.  CONCLUSION

In sum, Sunstone's complaint pens its suspicions, but no sufficient factual allegations that rise to a reasonable inference that Synopsys breached the narrowly-drawn Exclusivity Provision.  As it confirmed during argument, Sunstone surmises that maybe discovery might get it there.  But even the minimal standard applicable at this stage hasn't been met; Sunstone fails in the first instance to adequately allege a breach of the specific limited Exclusivity Provision here.  And because Sunstone has failed to allege actionable breach, any claim of suffered damages is of no moment.  Accordingly, Synopsys's Motion to Dismiss is **GRANTED**.

**IT IS SO ORDERED.**

/s/ Paul R. Wallace

_____

Paul R. Wallace, Judge*

---

[26]    *See Windsor I LLC v. CWCapital Asset Management LLC*, 283 A.3d 863, 871 (Del. 2020); *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001) ("[T]he trial court is not required to accept every strained interpretation of the allegations proposed by the plaintiff, but the plaintiff is entitled to all reasonable inferences that logically flow from the face of the complaint.").

*    Sitting by designation of the Chief Justice pursuant to *In re Designation of Actions Filed Pursuant to 8 Del. C. § 111* (Del. Feb. 23, 2023) (ORDER).