**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| HECATE HOLDINGS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2024-0928-KSJM |
| | ) | |
| REPSOL RENEWABLES NORTH AMERICA, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| REPSOL RENEWABLES NORTH AMERICA, INC., | ) | |
| | ) | |
| Counterclaim-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HECATE HOLDINGS LLC, CHRISTOPHER BULLINGER, NICHOLAS BULLINGER, DAVID TOHIR, FAZLI QADIR, WINSTON & STRAWN LLP AND RICHARD SHUTRAN, | ) | |
| | ) | |
| Counterclaim-Defendants. | ) | |

**ORDER GRANTING WINSTON & STRAWN LLP AND RICHARD SHUTRAN'S MOTION TO DISMISS THE VERIFIED COUNTERCLAIMS**

1. This case arises over the now-settled dispute over the ownership of Hecate Energy Group LLC ("HEG"). Majority member Hecate Holdings LLC ("Hecate Holdings") sued minority member Repsol Renewables North America, Inc. ("Repsol") to enforce its contractual right to put its membership interest in HEG to Repsol. Repsol disputed Hecate Holdings' valuation and asserted counterclaims against Hecate Holdings, its directors, and Hecate Holdings' lawyers, Richard

Shutran and his firm, Winston & Strawn LLP ("Winston"). Hecate Holdings and Repsol entered into a Settlement Agreement on July 15, 2025.[1] The Settlement Agreement released Hecate Holdings and its directors.[2]

2. Shutran and Winston, who were not parties to the Settlement Agreement, have moved to dismiss the Counterclaims against them under Court of Chancery Rule 12(b)(6).[3] Those Counterclaims are: Count III for aiding and abetting a breach of the Limited Liability Company Agreement ("LLC Agreement"); Count V for breach of their fiduciary duties; and Count VII for tortious interference with the LLC Agreement and Settlement Agreement.

3. "[T]he governing pleading standard . . . to survive a motion to dismiss is reasonable 'conceivability.'"[4] When considering a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the [c]omplaint as true . . . , draw all reasonable inferences in favor of the plaintiff, and deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[5] The court, however, need not "accept conclusory allegations

---

[1] *Hecate Hldgs. LLC v. Repsol Renewables North America, Inc.*, C.A. No. 2024-0928-KSJM, Docket ("Dkt.") 229, Ex. 1 at 1.

[2] *Id.* at 2.

[3] Dkt. 223.

[4] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 537 (Del. 2011).

[5] *Id.* at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[6]

4.     Count III for aiding and abetting the breach of the LLC Agreement is dismissed. "Delaware law does not recognize a claim for aiding and abetting a breach of contract."[7] At oral argument, Repsol conceded this point.[8]

5.     Count V for breach of fiduciary duties is dismissed because neither Shutran nor Winston owed fiduciary duties to Repsol.[9]

     a.     To establish a fiduciary relationship, Repsol relies on the attorney-client relationship. Repsol does not allege that it engaged Shutran or Winston to provide legal services. Nor does it allege any facts supporting the inference that Shutran or Winston were acting on Repsol's behalf or engaging in other activity that would imply an attorney-client relationship. Rather, Repsol argues that Shutran and Winston's representation of HEG necessarily means that they represented Repsol as HEG's minority member.

     b.     Repsol bases that argument on decisions of this court holding that a member's designee on the board is a "joint client" of counsel to the entity, and

---

[6] *Price v. E.I. du Pont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), *overruled on other grounds by Ramsey v. Georgia S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255 (Del. 2018) (citing *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)).

[7] *Gerber v. EPE Hldgs., LLC*, 2013 WL 209658, at *11 (Del. Ch. Jan. 18, 2013).

[8] Dkt. 236 at 28:1–5 ("[O]n behalf of my client, we will concede Count Three, which is the aiding and abetting claim. So I do not intend to focus my argument on that count. We concede it.").

[9] *In re Rural Metro Corp.*, 88 A.3d 54, 80 (Del. Ch. 2014) (holding that a claim for breach of fiduciary duty requires "the existence of a fiduciary relationship").

that the designee and member are within the scope of the entity's attorney-client privilege as a result.[10]  The court relied on a line of cases earlier in this action when granting Repsol's motion to compel documents withheld as privileged.[11]

       c.       Repsol misconstrues the holding of those authorities.  The joint-client rule is an information-sharing rule rooted in a director's expansive right to access company information.[12]  It informs who is within the scope of a corporation's privilege.  It does not create a full-blown fiduciary relationship between company counsel and each of the company's stockholders or, in the LLC context, members.[13]  Nor does it eliminate the rule that "when they represent a corporation, lawyers represent the entity and do not thereby represent any single corporate constituency."[14]

---

[10] *See, e.g., Hyde Park Venture P'rs Fund III, L.P. v. FairXchange, LLC*, 292 A.3d 178, 188 (Del. Ch. 2023).

[11] *See* Dkt. 105 at 10:7–11:24.

[12] *See Hyde Park*, 292 A.3d at 184 ("The bottom line for the attorney-client privilege is that under the joint client approach, the investor presumptively joins the director within the circle of confidentiality, and the corporation cannot invoke the privilege against the investor for materials created during the director's tenure.").

[13] *See Max-Planck-Gesellschaft Zur Foerderung der Wissenschaften E.V. v. Wolf Greenfield & Sacks, PC*, 736 F. Supp. 2d 353, 362 (D. Mass. 2010) (agreeing that a doctrine that is "applied to disputes over whether shared communications are privileged" has no bearing on "[t]he appropriate standard for determining whether an implied attorney-client relationship exists").

[14] *Cole v. Wilm. Mat'ls, Inc.*, 1993 WL 257415, at *1 (Del. Ch. July 1, 1993) (citing Del. Lawyers' R. Prof'l Conduct 1.13).

4

6.     Count VII for tortious interference is dismissed because Repsol did not allege that Shutran or Winston exceeded the scope of their authority.   Winston and Shutran are agents of HEG and Hecate Holdings, not Repsol.  Under Delaware law, "an agent for a party to a contract cannot interfere with [his or its] principal's own contract, provided the agent does not exceed the scope of [his or its] authority."[15] There is no allegation that Shutran or Winston exceeded the scope of their authority to HEG or Hecate Holdings.

7.     Shutran and Winston's motion is GRANTED.[16]

/s/ *Kathaleen St. J. McCormick*
Chancellor Kathaleen St. J. McCormick
Dated: January 12, 2026

---

[15] *Est. of Carpenter v. Dinneen*, 2007 WL 2813784, at *7 (Del. Ch. Apr. 11, 2007).

[16] Counterclaim-Defendants argue that the Settlement Agreement released Repsol's claims against Shutran and thus Winston is also released because its liability is solely vicarious.  Delaware courts have not decided whether releasing an agent eliminates the vicarious liability of an agent's principal. *First State Staffing Plus, Inc. v. Montgomery Mut. Ins. Co.*, 2005 WL 2173993, at *10 (Del. Ch. Sep. 6, 2005) ("It remains undetermined under Delaware law . . . whether a plaintiff may pursue claims against a principal whose only basis of liability derives from the alleged negligence of an agent that has been released from liability.").   Because the other substantive 12(b)(6) arguments were straightforward, this decision focused there rather than wading into an uncertain area of law.